# FIRST NATIONAL BANK OF GREENVILLE
## v.
## ASA J. SHERBURNE.

1. BANKING—LOAN BY DISCOUNT.—Where a note was indorsed in blank by the payee and before maturity delivered for value to the appellant bank through its cashier. *Held*, that the fair and reasonable presumption from the fact that the note was taken in the "usual course of business" of a national bank would be that it was discounted; that although in form and in common parlance it was a purchase of the note, yet in substance it was a loan by way of discount made by the bank to the payee, and the relation of debtor and creditor as between them was created.

2. CONSTRUCTION OF STATUTE—PURCHASE BY DISCOUNT.—In the absence of Federal or binding authority as to the construction to be given Section 5136, U. S. R. S., the court places its decision upon higher ground, and is of opinion that a purchase may be made by way of discount equally as well as a loan may be made by way of discount.

3. DISCOUNT, MEANING OF.—Discount means *ex vi termini*, a deduction or drawback made upon advances or loans of money, upon negotiable paper or other evidences of debt payable at a future day, which are transferred to the bank.

4. NOTICE TO BANK—KNOWLEDGE OF PRESIDENT.—Where a note, before maturity, was taken by the cashier of a national bank in the usual course of business, and he had no notice or knowledge of the contract of warranty in regard to the machine sold or of any failure of the consideration of the note, and there was a like lack of notice or knowledge on the part of all the directors and officers of the bank except the president, who, being a mutual friend of the payee and appellee, wrote both the note and the contract of warranty, and also knew, as such friend, prior to the transfer of the note, that appellee claimed the machine had failed to work as warranted and had

demanded a return of the note, but he never informed any of the directors or officers of the bank of these facts and did not know the bank had taken the note in question until two or three months after it had been assigned, and the board of directors did not appear to have defined the duties of the several officers as authorized by the National Bank Act. *Held*, that the knowledge of the president was not notice to the bank and the plea of failure of consideration is no defense; that if the notice in this case had been to either the cashier or the board of directors, it would have been notice to the bank.

APPEAL from the Circuit Court of Bond county; the Hon. A. G. HENRY, Judge, presiding. Opinion filed April 18, 1884.

Messrs. VAN HOOREBEKE & FORD and Mr. W. A. NORTH-COTT, for appellant; as to the duties of a president of a bank, cited Hodges v. First Nat. Bank, 22 Gratt. 51; Morse on Banks and Banking, 143; First Nat. Bank v. Bennett, 33 Mich. 520; Mechanics Bk. v. Rawls, 7 Ga. 791.

As to the duties of the cashier: Caldwell v. N. Mohawk Bk., 64 Barb. 333; Ryan v. Dunlap, 17 Ill. 45; Morse on Banks and Banking, 156, 157; Story on Agency, § 114; Merchants Bk. v. State Bank, 10 Wall. 604; U. S. v. City Bk. of Columbus, 21 Howard, 356; Fleckner v. Bank U. S., 8 Wheat. 338; Wakefield Bk. v. Truesdail, 55 Barb. 602; Angell & Ames on Corporations, §§ 299–308; Wild v. Bk. of Passamaquoddy, 3 Mason, 505; Paley on Agency, 156; Bissell v. First Nat. Bk. of Franklin, 69 Penn. 419.

Notice to the president or cashier in their official capacity is notice to the bank: La. State Bk. v. Senecal, 13 La. 525; Branch Bk. v. Steele, 10 Ala. 924; Everett v. U. S. Bk., 6 Porter, 166; Union Mining Co. v. Rocky Mt. Nat. Bk., 2 Colo. 248; Central Nat. Bk. v. Levin, 6 Mo. App. 543; Porter v. Bk. of Rutland, 19 Vt. 425.

The unofficial knowledge of the officers of an incorporated bank is no more operative against the bank than the knowledge of a stranger: Atlantic State Bk. v. Savery, 18 Hun, 36; Nat. Bk. v. Norton, 1 Hill, 572; Seneca Co. Bk. v. Neass, 5 Demi. 329; Westfield Bk. v. Cornen, 37 N. Y. 420; 1 Parsons on Contracts, 65; Miller v. I. C. R. R. Co., 24 Barb. 312; Com. Bk. v. Cunningham, 24 Pick. 276; West St. Louis,

Savings Bk. v. Shawnee Co. Bk., 95 U. S. 557; Farmers, etc. Bk. v. Payne, 25 Conn. 444.

The power given in the act of Congress to discount embraces the power to purchase: Curtis v. Leavitt, 15 N. Y. 9; Leach v. Hale, 30 Ia.; Gen'l Ins. Co. v. U. S. Co., 10 Md. 517; President v. Cornen, 37 N. Y. 320; U. S. Ins. Co. v. Schriver, 3 Md. Chy. 381; U. S. Bk. v. Davis, 2 Hill, 462.

Mr. W. H. DAWDY and Mr. S. A. PHELPS, for appellee; that power to discount notes is not power to purchase them, cited Morse on Banks and Banking, 2d ed., 7; Lazear v. Nat. Un. Bk., 36 Am. R. 35; First Nat. Bk. v. Pierson, 24 Minn. 140; Farmers and Mechanics Bk. v. Baldwin, 23 Am. R. 683; Thompson's Nat. Bk. Cases, 637.

The making of discounts is an inalienable function of the directors, and they can not invest any other officer of the corporation with that power: Morse on Banks and Banking, 109; Lyon v. Jerome, 29 Wend. 485; Bk. of U. S. v. Dunn, 6 Pet. 51.

The distinction between notice to director as an officer and as an individual is not sustained by weight of authority: Wade on Notice, § 683.

When the president has knowledge of equities subsisting against the note, the bank is chargeable with notice: Wade on Notice, § 675; Bk. of New Milford v. Town of New Milford, 36 Conn. 93.

When a party is about to receive a bill or note, if there are any such circumstances within the knowledge of the party as would induce a prudent man to inquire into the consideration of the same, and he neglects to make the proper inquiries, he shall hold the note subject to all equities: Russell v. Hadduck, 3 Gilm. 233; Murray v. Beckwith, 48 Ill. 391; Stevenson v. O'Neal. 71 Ill. 314; Parker v. Merrett, 105 Ill. 293.

BAKER, J. The power given to national banks as respects the matters here in issue, is "to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt." R. S. U. S.,

Sec. 5136. It is urged the transaction involved in this case was a purchase by appellant of the note, that a national bank has no power to make such purchase, and that the bank took no title thereto and can not recover thereon. The cases of Lazear v. Nat. Union Bank of Md., 52 Md. 78; F. & M. Bank v. Baldwin, 23 Minn. 198, and the First Nat. Bk. v. Pierson, 24 Minn. 140, are cited as authorities in that behalf. As we understand the facts of the case bearing upon the question under consideration, the note was executed by appellee and payable on the 1st of September, 1882, to the order of one E. B. Wise, and was by said Wise on the 29th of June, 1882, and before maturity, indorsed in blank and delivered for value through its cashier to the appellant bank. No point was made in the court below as to the title of appellant, and the evidence does not disclose what discount was made upon the note.

The argument made here is based upon the statement of the cashier, that he purchased the note from Wise and that it was bought in the usual course of business as he bought other notes. It may be questionable whether the words used in the statute "by negotiating" are broad enough to include that which was here done by the bank; and yet according to the lexicographers, the word "negotiate" means not only "to transfer," "to sell" "to pass" but "to procure by mutual intercourse and agreement with another." It appears the note was taken by a national bank and "in the usual course of business." Admitting the bank had no power to become vested with the legal title to the note otherwise than by "discounting" it—the fair and reasonable presumption, from the fact it was taken in the usual course of business of a national bank, would be that it was discounted. The fact the cashier in stating the transaction uses the words "purchased" and "bought," we do not deem of much importance. In Atlantic State Bank v. Savery, 82 N. Y. 291, a similar statute was under consideration and the word "bought" was used by the witness and a written memorandum of the transfer was made and delivered at the time in which the word "sold" was used, and yet it was held it was a discount and the title to the note

was valid. In the present case the paper was procured from Wise, who was both payee and indorser, and was transferred by an indorsement imposing the ordinary liability upon the indorser.

Although in form and in common parlance it was a purchase of the note, yet, in substance, it was a loan by way of discount made by the bank to Wise; and the relation of debtor and creditor as between them was created.

Discount is the difference between the price and amount of the debt, the evidence of which is transferred; and the character of the paper with reference to its being business or accomodation paper is immaterial as respects the transaction being properly denominated a loan. National Bank v. Johnson, 104, U. S. 271. Had the transfer been by delivery only, or by an indorsement without recourse, then, probably, it might be regarded as an absolute purchase of the note.

This is sufficient upon this point for the purposes of the present controversy. We are inclined, however, in the absence of Federal or binding authority as to the construction to be given this section 5136, R. S. U. S., to place our decision upon higher ground. A purchase may be made by way of discount, equally as well as a loan may be made by way of discount. Discount means *ex vi termini*, a deduction or drawback made upon advances or loans of money upon negotiable paper or other evidences of debt, payable at a future day, which are transferred to the bank. Fleckner v. Bank of U. S., 8 Wheat. 338, 350; and in the same case Mr Justice Story speaks of " a purchase by way of discount." If the party dealing with the bank assumes a responsibility, it is a loan; if he does not, it is an advance made to him in consideration of the transfer without recourse or by delivery. If a greater rate of discount is taken or reserved than the Bank Act allows, then the bank is liable to the penalties imposed by the act, but the title of the bank to the paper is not affected. The decision of the New York Court of Appeals in Govery's case, 82 N. Y. 291, is much in point. See, also, the able discussion of the subject in the dissenting opinion in Lazear's case, 52 Md. 126. We think the logic of the opinion of the Supreme

Court of the United States in National Bank v. Johnson, 104 U. S. 271, leads to the same conclusion.

The defense relied on at the trial was that of a failure of the consideration of the note. Of course, as the assignment was before maturity, such defense can not be successfully interposed if the appellant bank took the note in good faith and without notice. It appears from the evidence the note was taken by the cashier of the bank in the usual course of business, and that he had no notice or knowledge of the contract of warranty in regard to the machine sold or of any failure of the consideration of the note. There was a like lack of notice or knowledge on the part of all the directors and officers of the bank, except McNeill. McNeill was president of the bank at the time the note was executed and until January, 1882, and was vice-president from the latter date until after the supposed failure of the machine to do good work, in the harvest of 1882, and after the assignment of the note. He, as a mutual friend of the payee, Wise, and appellee, wrote both the note and the contract of warranty; and he also knew as such friend, prior to the transfer of the note, that appellee claimed the machine had failed to work as warranted, and had demanded a return of the note. It also appears that McNeill never informed any of the directors and officers of the bank of the contract between Wise and appellee, or of the supposed failure of consideration; that the cashier and book-keeper did the general business of the bank and purchased the notes, and that the only part McNeill ever took in the purchase of notes was that, if he was present, the cashier might sometimes ask him about notes he was buying, and that he did not know the bank had taken the note in question until two or three months after it had been assigned.

The general management of the business of a national bank is confided to a board of directors, and this board appoints the president, vice-president, cashier and other officers. The National Bank Act nowhere defines the duties of these several officers, but authorizes the board to do so; and in this case, the board does not appear to have exercised that authority. The president and vice-president then, of appellant, must be

regarded as having only such powers and duties as are necessarily incident to their respective offices.

The president of a bank has very little inherent power; it is his duty to preside at the meetings of the board of directors and he has charge of the litigation of the bank; and other than these he has no power inherently over and beyond another director. Hodge's Exr. v. Nat. Bank, 22 Gratt. 51. We are not advised the vice-president of a bank has inherently any other than contingent duties to perform, unless it be he is also a member of the board of directors. As matter of fact, these officers may frequently transact important business for the bank. Sometimes it is done by express authority from the directors; and sometimes, if done with the knowledge and approbation or the tacit sanction of the board, it may be regarded as legalized by the principles of ratification or usage. Morse on Banks, 128. The powers and duties of a cashier are much more numerous. In all transactions in which the bank may lawfully engage, the cashier is its managing agent. While he is the business officer of the bank, it is in the sense of one who transacts the business, and not of one who regulates and controls it. Morse on Banking, 137.

Without discussing the relative powers and duties of a board of directors and a cashier, it may perhaps be safely assumed that if the notice in this case had been to either one or the other, it would have been notice to the bank.

Parsons states the rule of law to be that a notice to a corporation binds it only when made to an officer whose situation and relation to the corporation imply that he has authority to act for the corporation in the particular matter in regard to which the notice is given. 1 Parsons on Contracts, p. 77. In Story on Agency, Sec. 140, and following sections, the subject under examination is quite fully discussed, and in Sec. 140 b, it is said: "If we examine the subject upon general principles, and with reference to practical convenience in the administration of banks, it might seem that, to bind the banks, the notice ought to be given to the proper agents of the bank legally intrusted with the particular business to which the notice relates. If the business be legally confided

First National Bank of Greenville v. Sherburne.

to the cashier, notice to him ought to bind the bank. If it is to be done by a board of directors, as, for example, in the discounting of notes, they ought to have official notice of any illegality or informality affecting the notes, and notice to one director only, unknown to others of the board, ought not to bind the bank."

In Angell and Ames on Corporations the same subject is discussed in Sections 306, 307 and 308. It is there said, among other things, that notice to either of the directors whilst engaged in the business of the bank, is notice to the bank; but that where a director is not engaged in the business of the bank, notice to him will not be deemed notice to the bank. And it is also stated, notice to the director of a bank will not be deemed notice to the bank, unless the director be constituted an organ of communication between the bank and those who deal with it; and that a private communication of a fact to a director, or his knowledge of it from rumor, is clearly no notice to the board unless he communicate the fact to the board.

The rule is stated in Morse on Banks, p. 109, to be that if the director acquired the knowledge in his official capacity, or in the course of, or in relation to, any special matter or function of which he had charge as an agent of the bank, then he knows it as a director, and the law holds that the bank also knows it; but that if he acquired it solely as any other private individual might have acquired it, and not officially, or in connection with his discharge of the functions of his office, or if it did not relate to any matter in which he owed a peculiar duty to the bank, he does not know it as director, and the bank does not know it by implication from his knowledge, unless, as a matter of fact, he communicated it to his co-directors or such of them as are present at the meeting.

Tested by the rules of the law as stated above, it would seem the knowledge of McNeill was not notice to the bank, and that the plea of a failure of consideration is no defense under the circumstances of this case. The rulings of the court upon the instructions were in conflict with the views herein expressed, and were erroneous.

The judgment is reversed and the cause remanded.

Reversed and remanded.