THE SALMON FALLS BANK v. LEYSER, *et al.*, *Appellants.*

### Division Two, May 16, 1893.

1. **Pleading**: VARIANCE. A variance between notes offered in evidence and those described in the petition can only be taken advantage of on ground of surprise supported by affidavit as provided by Revised Statutes, 1889, secs. 2096, 2097.

2. **Evidence**: AGENCY. Agency cannot be shown by the admissions or statements of the alleged agent.

3. **Banking Corporation**: PURCHASING NOTES: CHARTER. A banking corporation engaged in general banking business has, in the absence of any restricting provisions in its charter, power to buy notes outright.

4. ———: ———: USURY. The rate of discount charged in the purchase of the notes should not exceed the lawful rate of interest authorized in case of a loan of the money; otherwise the transaction would be usurious.

5. **Pleading**: PETITION: CAUSE OF ACTION. A petition which states a cause of action defectively (not a defective cause of action) is good after verdict.

6. ———: ———: ———. Where the facts necessary to constitute a cause of action can be inferred from the petition taken as a whole, the latter, though informal in some of its parts, is good after verdict.

7. **Contract**: BOND: INDEMNITY: COVENANT. S. sold to B. property taking B.'s notes therefor. S. afterwards repurchased it, agreeing, in consideration thereof, to pay the notes and gave B. a bond that if he should pay the notes as they matured and save B. harmless, the bond should be void and conditioned further, that any liability or loss caused B. by default of S. should be a breach of the bond and the subject of an action thereon. *Held*, that the obligation was not a contract of indemnity, but an affirmative covenant on which an action could be brought on failure to pay.

The Salmon Falls Bank v. Leyser.

8. ———: ———: ———: ———: SURETY. When the property was repurchased by S. and he covenanted to pay the notes, he became in equity the principal debtor and B. a surety, so that a prior transferee of the note could avail himself of the bond.

9. ———: ———: ———: ———. The bond being one of direct covenant and not of indemnity, the assignee of the note could sue on it without first exhausting other remedies.

10. Chattel Mortgage: FORECLOSURE: DEPRECIATION OF PROPERTY. The mere fact that the assignee of the notes failed to foreclose a chattel mortgage given to secure them as soon as the condition was broken, he no having been requested to foreclose, does not entitle the obligors on the bond to credit for the depreciation in the property between breach of condition and foreclosure.

11. Creditors' Bill. The nature of a creditors' bill considered.

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*G. W. Barnett* for appellant, *Ilgenfritz* and *Sangree & Lamm* for estate of Henry Leyser.

(1) The objection to the introduction of any evidence upon the ground that the petition did not state facts sufficient to constitute a cause of action should have been sustained. *Burnside v. Fetzner,* 63 Mo. 107; Sheldon on Subrogation [1 Ed.], secs. 188, 160, 161, 162; *Scott v. Roberts,* 67 Mo. 293; *Los Angeles v. Signoret,* 50 Cal. 298; *Lambert v. Haskell,* 80 Cal. 611; Bliss on Code Pleading [1 Ed.] rule 2, p. 282; *Ibid.* sec. 318. (2) There is no privity of contract between the plaintiff and the defendants; and no consideration from the plaintiff to the defendants to support a promise. *Turk v. Ridge,* 41 N. Y. 201; *Manny v. Frazier,* 27 Mo. 419; *Ham v. Hill,* 29 Mo. 275; *Mellen v. Whippel,* 1 Gray 317; *Ins. Co. v. Mayer,* 8 Mo. App. 18; *Blymire v. Boistelle,* 6 Watts 183; *Merrell v. Greene,* 55 N. Y. 270; *Sympson v. Brown,* 68 N. Y.

355; *Bank v. Grand Lodge,* 98 U. S. 123; *Morrell v. Lane,* 136 Mass. 93; *Hampton v. Phipps,* 108 U. S. 260; Book 27 L. C. P. Ed. p. 719; *Garnsey v. Rogers,* 47 N. Y. 233. (3) Banking powers to be exercised by corporations must be expressly granted and only those powers can be exercised which are specifically granted by the act of incorporation or are necessary to carry into effect the powers expressly granted. And a bank cannot so deal in promissory notes as to become the purchaser thereof unless authorized by its charter. *Bank v. Simpson,* 1 Mo. 184; *Blair v. Ins. Co.* 10 Mo. 560; 2 American and English Encyclopedia of Law, p. 90; *State v. Stebbins,* 1 Stewart (Ala.) 299; *Barnes v. Bank,* 19 N. Y. 152; *People v. Ins. Co.,* 15 Johnson (N. Y.) 358; *Duncan v. Savings Inst.,* 10 Gill & J. (Md.) 299; *Weckler v. Bank,* 42 Md. 581. A bank empowered to discount negotiable notes has no power to purchase such notes. *Bank v. Baldwin,* 23 Minn. 198; *Bank v. Pierson,* 24 Minn. 140; *Bank v. Baker,* 15 Ohio St. 68. (4) On the undisputed facts of this case, plaintiff is not entitled to equitable relief, and the bill should have been dismissed. *(a)* The rule that equity will not interfere as long as a full and convenient legal remedy exists, applies in full vigor where the aid of the purely equitable and benevolent *(Cheesborough v. Millard,* 1 Johns. Ch. R. 409) doctrine of subrogation is invoked. Brandt on Suretyship and Guaranty [1 Ed.], sec. 254, and authorities cited; *Ibid.* sec. 173; *Jones v. Bank,* 29 Conn, 25; *Vail v. Foster,* 4 N. Y. 312; Sheldon on Subrogation [1 Ed.], secs. 160, 162; *Ibid.* sec. 4; *Merry v. Freeman,* 44 Mo. 518; *Almet v. Leeper,* 48 Mo. 319; *Woolfolk v. Kemper,* 31 Mo. App. 421; *Turner v. Knight,* 46 Mo. 95; *McDermat v. Strong,* 4 Johns. Ch. 690; *Humphreys v. Milling Co.,* 98 Mo. 542. *(b)* J. D. Sicher is confessed to be insolvent. If it be conceded for the purpose of the proposition that Brown and

F. E. Sicher were also insolvent (which fact was not shown) yet there remained of those originally and primarily bound on the two notes, two solvent parties, Newkirk and Thompson, who, under the facts disclosed in this case, were not even endorsers, but *makers*, and liable as such to plaintiff. Parties who are neither payees nor endorsees and whose names appear on the back of notes, are, in the absence of extrinsic evidence, presumed to be makers. *Perry v. Barrett*, 18 Mo. 140; *Seymour v. Farrell*, 51 Mo. 95; *Mammon v. Hartman*, 51 Mo. 168; *Cohn v. Dutton*, 60 Mo. 297; *Chaffee v. Railroad*, 64 Mo. 193; *Semple v. Turner*, 65 Mo. 695; *Bank v. Dunklin*, 29 Mo. App. 442; *Schmidt Malting Co. v. Miller*, 38 Mo. App. 251; *Butler v. Gambs*, 1 Mo. App. 466; *Boyer v. Boogher*, 11 Mo. App. 130. (5) The court erred in not allowing the sureties on the bond a credit for the amount of the depreciation and loss on the value of the mortgaged property after condition broken and which arose from the negligence of the plaintiff in not realizing on the primary security it held and controlled. *(a)* The appellants, as sureties, on paying the debt, being entitled to receive the securities held by the bank; it results that the plaintiff's relation to the mortgaged property, in equity, was that of trustee for the benefit of all concerned, including appellants. *Bank v. Young*, 43 N. H. 460; Brandt on Suretyship and Guaranty [1 Ed.], sec. 384, and cases cited; *Ibid.* sec. 387; *Phares v. Barber*, 49 Ill. 370; *Hayes v. Ward*, 4 Johnson Chan. 130. This being the case, plaintiff will be held to the care and diligence of a trustee in dealing with the trust estate. A trustee is responsible for negligence arising from acts, whether of omission or commission, *passive conduct and all laches* resulting in loss. 2 Perry on Trusts [2 Ed.], 845, 847; 1 *Ibid.* 438, 440, 441; *Noff's Appeal*, 57 Pa. St. 91; *King v. Talbot*, 40 N. Y. 76; 2 Pomeroy's Equity,

secs. 1062. 1066, 1067, 1070; *Meyers v. Meyers*, 98 Mo. 262; *Booker v. Armstrong*, 93 Mo. 49; *Atterberry v. McDuffee*, 31 Mo. App. 603; *Taylor v. Hite*, 61 Mo. 142; *Merritt v. Merritt*, 62 Mo. 150. *(b)* After condition broken the mortgagee in a chattel mortgage is regarded as absolute owner. *Robinson v. Campbell*, 8 Mo. 365; *Williams v. Rorer*, 7 Mo. 556; *Lacy v. Wathen*, 36 Mo. 320; *Dean v. Davis*, 12 Mo. 112; *Pace v. Pierce*, 49 Mo. 393; *Bowers v. Benson*, 57 Mo. 26; *State ex rel. v. Adams*, 76 Mo. 605.

*Jackson & Montgomery* for respondents.

(1) There was no error in refusing to permit the witness, Shirk, to testify as to statements made by Thompson. The evidence was hear-say and not being part of the *res gestæ* the agency could not be shown by the admissions of Thompson. Mechem on Agency, sec. 99. There was no variance between the notes as pleaded and as offered in evidence. And if there had been, appellant could only have taken advantage of it in the manner pointed out by statutes. Revised Statutes, 1889, secs. 2096, 2097; *Fisher v. Max*, 44 Mo. 40; *Meyer v. Chambers*, 68 Mo. 626. (2) The evidence does not bear out the claim of respondent as to usury. The receipt of commissions for discounting a note by an agent does not make the note usurious. 3 Parsons on Contract [7 Ed.], pp. 144, 145. There was no evidence that the parties charged to have received the alleged bonus were agents for any other · person than the defendant Sicher. (3) Respondent, as a foreign corporation, had a right to deal in commercial paper, notwithstanding sections 4190 and 4192, Revised Statutes, 1879, were in force at the time. *Long v. Long*, 79 Mo. 644. (4) The petition sufficiently alleges the execution of the notes, their purchase by respondent

and the default in the payment thereof, the execution of the bond and breaches, etc. The bond is copied in the petition *in hæc verbæ* and it contains a full recital of all the facts leading up to the execution and this is sufficient. Bliss on Code Pleading, secs. 307, 316, 210; *Joseph v. Holt*, 37 Cal. 253; *Prindle v. Carruthers*, 15 N. Y. 426; *Glenny v. Hutchins*, 4 How. Pr. 99; *Roberts v. Goode*, 36 N. Y. 410; *Edmonson v. Philip*, 73 Mo. 59; *Bateson v. Clark*, 37 Mo. 24; *State ex rel. v. Bush*, 77 Mo. 586; *State ex rel. v. Williams*, 77 Mo. 467. The appellants cannot take advantage of it even if it was objectionable. All the facts requisite to constitute a full and complete compliance are clearly inferable from the pleading in its entirety, and defendant went to trial upon the petition thereby waiving his objection. *State ex rel. v. Williams*, 77 Mo, 467; *Hurt v. Hahn*, 61 Mo. 497; *Ryan v. Pratt*, 39 Mo. 290. (5) No privity of contract is necessary to be shown, and no consideration. The bond sued upon is a direct covenant to pay these notes and plaintiff's remedy upon it was complete when it became the owner of the notes. *Ham v. Hill*, 29 Mo. 277; *Rowsey v. Lynch*, 61 Mo. 562; *Burnside v. Fetzner*, 63 Mo. 110; *Moore v. Damon*, 4 Mo. App. 111; *Sturgess v. Crum*, 29 Mo. App. 644; Sedgwick on Damages, sec. 304, p. 166. The case of *Manny v. Frazier*, 27 Mo. 419, cited by appellant, has been overruled. *Meyers v. Lowell*, 44 Mo. 329; *Rogers v. Gosnell*, 58 Mo. 590; *Rogers v. Gosnell*, 51 Mo. 466; *Cross v. Blodgett*, 64 Mo. 452; *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 687. (6) Plaintiff's proper forum was in a court of equity. It was not necessary for plaintiff to show it has exhausted the remedy at law or that Newkirk and Thompson were insolvent, it being shown that the original maker, Brown, and payee, Sicher, of the notes were insolvent. Sheldon upon Subrogation, secs. 160, 161, 162, 188 and 198,

and the other authorities cited by appellants, only hold that where a bond or other security is given to indemnify a surety simply, a creditor cannot have recourse thereon until the surety is shown insolvent. *Heim v. Vogel*, 69 Mo. 635; *Fitzgerald v. Barker*, 70 Mo. 687; *Crawford v. Edwards*, 33 Mich. 360; Jones on Mortgages, sec. 741, 742; *Kinsey v. McDearman*, 5 Cold. (Tenn.) 396; *McMullen v. Bank*, 32 Ind. 14; Sheldon on Subrogation, sec. 102; *Horner v. Bank*, 7 Conn. 486; *Moses v. Muraytroyd*, 1 Johns. Ch. 228; *Russell v. Clark*, 5 Cranch 97; Story's Equity [12 Ed.] sec. 502; *Carpenter v. Bowen*, 42 Miss. 54. (7) Forbearance or delay of the creditor towards the debtor, without any notice to proceed by the surety, does not release the surety. *Rucker v. Robinson*, 36 Mo. 155; *McCune v. Belt*, 38 Mo. 292; *Headlee v. Jones*, 43 Mo. 237; *Hosea v. Rowley*, 57 Mo. 358; *Stillwell v. Aaron*, 69 Mo. 541; *Ins. Co. v. Havell*, 83 Mo. 28. (8) And the same rule applies in the case at bar, as is shown by the authorities hereinafter cited. There is no positive duty incumbent on the creditor to prosecute measures of active diligence against the debtor, and therefore mere delay on his part does not amount to laches. It is only when he omits to do any act when required by the surety, which his duty enjoins him to do that the surety can complain. The duty is upon the surety to pay the debt upon default of his principal to do so and enforce the security himself. The plaintiff is under no higher obligation to enforce the mortgage than the defendants to pay the notes according to their covenant. Story's Equity, secs. 324, 326, 327; also secs. 501, 502, 639; *Lang v. Brevard*, 3 Strobhard, 62; *Pickens v. Finney*, 12 S. & M. 469; *Joslyn v. Smith*, 13 Vt. 356; *Wright v. Simpson*, 6 Vesey 734; *U. S. v. Kirkpatrick*, 9 Wheat. 735; *McLemore v. Powell*, 12 Wheat. 556; *Hayes v. Ward*, 3 Johns. Ch. 127, *Schroeppell v.*

*Shaw*, 3 Comstock 452; *Bank v. Page*, 44 N. Y. 457; *Clopton v. Spratt*, 52 Miss. 251.

BURGESS, J.—On the twenty-first day of February, 1884, there were two principal hotels in Sedalia, one called the "Sicher Hotel," operated by Sicher Bros., who owned the furniture therein and leased the building from Henry Leyser; the other called the "Garrison House", and operated by George T. Brown. On that date Sicher Bros. sold their hotel property to Brown. The terms of the agreement were that on the fifteenth day of March, following, Sicher Bros. would execute a bill of sale to Brown of the Sicher Hotel furniture and appurtenances, including the good will of the business. That they would procure for Brown a lease of the hotel building for ten years, at an annual rental of $3,000 for the first two years, and at $3,500 for the remainder of the term. That they would cause to be built a certain addition to the building and procure a lease of that to Brown, the terms thereof being fully set forth, and that for a period of ten years Sicher Bros. would stay out of the hotel business in the city of Sedalia. In consideration of all which Brown agreed to pay Sicher Bros. $17,000 as follows: $5,000 in cash; $12,000 to be evidenced by promissory notes dated March 15, 1884, and payable respectively, in one year, eighteen months, two years and thirty months from date, and all bearing ten per cent.

These notes were to be secured by a chattel mortgage upon the furniture conveyed, and such as Brown might acquire during the existence of the lien for the purchase money. Brown was to keep the property insured for $12,000, the loss payable to Sicher Bros., or their assigns.

This contract was consummated in accordance with its terms on the fifteenth day of March by Sicher Bros.

delivering to Brown the bill of sale of the hotel furniture and putting him into the possession thereof, and Brown paying Sicher Bros. the cash payment and executing and delivering them the four notes called for by the agreement.

These notes were secured upon the goods mentioned in the bill of sale by a chattel mortgage. It is in the usual form, except that Henry Lamm was made the trustee, and Sicher Bros. the beneficiaries. It provided that if default was made in the payment of the notes, or either of them, as they became due, or if there was any unreasonable depreciation in the value of the property conveyed, then all the notes should at once become due and payable, and the trustee, or, upon his refusal to act, the sheriff, might take possession and foreclose. This chattel mortgage was duly acknowledged and recorded.

Leyser, the owner of the hotel building and ground, executed to Brown the lease called for by the contract. Brown opened the hotel and did business in it until December 16, of the same year; then, for some reason, he closed up the house and it remained closed until February 7, 1885, when Jos. D. Sicher, one of the brothers, bought it back from him.

During Brown's occupation of the hotel he ran it, using the furniture and fixtures in the usual and ordinary way of running a hotel, neither adding to or taking from the articles of furniture and fixtures delivered him with the bill of sale.

The day the first note came due, under the terms of the sale, Brown closed the house, refused to pay the note, but kept possession of the property until he effected a settlement with Sicher Bros. Frank Sicher had left Sedalia, and Joseph D., the remaining member of the firm, and Leyser, the owner of the building, arrived at a settlement with him. This contract was

in writing. It recites the original contract of purchase and the acts done under it, and that by mutual agreement all these contracts, except the notes and chattel mortgage, were rescinded. Brown was to surrender the buildings and the hotel furniture described in the chattel mortgage and Sicher was to pay the notes and all interest thereon on or before their maturity and to give Brown a bond with security to that effect. In accordance with this settlement Sicher, as principal, and the appellants as his sureties, executed and delivered to Brown the bond sued upon in this case. It is set out in the petition and is as follows:

"Know all men by these presents: That we, Joseph D. Sicher, as principal, and Henry Leyser, Thomas D. Quinn, R. N. Morrow and C. E. Ilgenfritz, as securities, are held and firmly bound and indebted unto George T. Brown, his heirs, executors, administrators and assigns, in the full sum of fifteen thousand dollars ($15,000.00), to the payment whereof we hereby bind ourselves, our heirs, executors and administrators, firmly by these presents.

" The conditions of the above obligation is as follows, to-wit:

"Whereas, about the fifteenth day of March, 1884, Sicher Bros., a firm composed of the aforesaid Joseph D. Sicher and one Frank E. Sicher, entered into a contract with the said Geo. T. Brown for the transfer and conveyance to him of all the furniture, fixtures, appurtenances, etc., connected with and used in the hotel in Sedalia, Missouri, formerly known as 'Sicher's Hotel,' and for a lease of said hotel and an addition to be built thereto, which said contract was followed by a lease of said premises, and a bill of sale of said personal property, to said George T. Brown, and the said George T. Brown, in addition to a cash payment made thereon, did execute and deliver to said Sicher Bros. his four

certain promissory notes, each for the sum of three thousand dollars ($3,000.00), dated on said fifteenth day of March, 1884, payable to the order of said Sicher Bros., respectively in one year, eighteen months, two years, and thirty months after said date, with interest on each of said notes at the rate of ten per cent. per annum until paid, all of which said notes are secured by a deed of trust of all of said personal property, in said deed of trust fully described, executed on said fifteenth day of March, 1884, by said George T. Brown to Henry Lamm, trustee, for the use of said Sicher Bros., or the holders of said notes, and recorded in the recorder's office of Pettis county, Missouri, in chattel mortgage record "F," at page 265 to 270.

"And, whereas, the said George T. Brown has compromised and adjusted the matter of the sale of said personal property with said Joseph D. Sicher, and leasing of said hotel property with Henry Leyser, the present owner thereof, by surrendering the possession of said hotel property to said Leyser, and receiving a full release from the contract of lease thereof; and by reconveying to said Joseph D. Sicher, the personal property aforesaid, conveyed to him by Sicher Bros., upon the assumption of the payment of the four promissory notes above mentioned, with all interest accrued or to accrue thereon.

"And whereas, the said Sicher Bros. have heretofore negotiated and assigned all of said notes, and the same are now held by parties unknown to the said Brown or Sicher.

"Now if the said Joseph D. Sicher shall well and truly pay each and all of said four promissory notes with all interest thereon, as the same mature, and fully satisfy all of said notes and discharge the same according to the tenor and effect thereof, and save the said George T. Brown, his heirs, administrators and execu-

tors harmless on account of said notes and of each of them, and of every part of the principal and interest of each of them, and will repay to said George T. Brown, his heirs, administrators and executors all sums of money that he or they may be required or compelled by suit or otherwise, to pay on said notes or any of them, with all costs of suit, or collection therein, then this obligation shall be null and void, otherwise to remain in full force and effect.

"And any liability, loss or payment occasioned to said George T. Brown, his heirs, administrators or executors, on account of the default by said Joseph D. Sicher, in the payment of any of them, or the interest thereon, shall be a breach of this bond, and the subject of an action thereon, without any release or discharge as to the balance of said notes or any part thereof.

"In witness whereof we have hereunto set our hands and seals this thirty-first day of January, 1885.

"[Signed.]    Joseph D. Sicher.    [seal.]

Henry Leyser.    [seal.]

Thomas D. Quin.    [seal.]

R. N. Morrow.    [seal.]

C. E. Ilgenfritz."    [seal.]

The settlement of this controversy between the parties was not concluded until the eleventh of February, 1885, when Jos. D. Sicher again got the possession of the house and furniture. He shortly afterwards sold one-half interest to Jas. H. Doyle.

The first two of the notes mentioned in the original contract of sale between Sicher and Brown were paid by Sicher & Doyle as they became due, but the two notes due March 15, 1886, and September 15, 1886, were not paid when due and this action was commenced on the bond December 6, 1886.

All of these notes were sold by Sicher Bros. very shortly after they were executed. The sale was made

through Cyrus Newkirk, and Jas. C. Thompson to the respondent. Mr. Sicher testified himself that he had an understanding with Newkirk and Thompson that the notes were to be negotiated if he took them, that they would not have sold the hotel unless they had been able to cash the notes in this way. That Mr. Thompson gave him material help in making the sale and that he paid him $1,000 for making the trade.

At the time the notes were negotiated $150 of interest had accrued and Sicher Bros. sold them at their face value, allowing the accrued interest to go.

A great deal of evidence was introduced by the defendants tending to show a great depreciation in the value of the property included in the chattel mortgage between the date of the bond sued upon and the commencement of this action.

The plaintiff is a banking corporation duly incorporated under the laws of the state of New Hampshire and engaged in a general banking business.

By the answer the defendants admit only the following allegations of the petition, to-wit: (1) The incorporation of the plaintiff under the laws of New Hampshire and that it is doing a general banking business. (2) The partnership of Sicher Bros. (3) The execution of the notes by defendant Brown to said firm. (4) The indorsement and assignment of the notes to plaintiff by Sicher Bros. on the ————— day of —————, 1884. (5) That the two first notes were paid. (6) That the bond was executed to Brown by J. D. Sicher and his sureties on January 31, 1885; and (7) that Brown holds the original and refuses to deliver the same to plaintiff.

The answer either denies *seriatim* the other allegations of the petition, or puts plaintiff on its proof of the same, and thus the plaintiff's power under its charter to buy or purchase the notes was made an issue

as well as the due protest of the paper and the insol-
vency of the Sichers and Brown, and the legal owner-
ship of the notes by plaintiff, also the allegation as to
their, being filed with the petition, and that in regard
to the possession on the part of the trustee of the
mortgaged property and his proceeding to foreclose,
etc.

The affirmative allegations in the answer are: (1)
That plaintiff, being a foreign corporation, could not
at the time alleged acquire title to the notes by
purchase by or through its agents in the city of Sedalia,
as it did, if at all. (2) That the last note, by the terms
of the contemporaneous deed of trust securing the
same, became due not according to its face, but on
default in the payment of the prior notes (which
default occurred) and was not protested, if at all, at
the right time, and the indorsers were thereby dis-
charged. (3) That plaintiff not only had notice by
the record of the terms of said deed of trust, but had
possession of the instrument itself. (4) That the bond
was executed long after the assignment of the notes to
plaintiff, at the request of Brown and as his individual
and sole indemnity against loss or damage. (5) That
plaintiff at that time had a deed of trust on a large
amount of valuable personal property amply sufficient
to secure the notes and on which (with the signatures
to the notes) it relied in the purchase of the notes.
(6) That the plaintiff was not a party to the bond and
never acquired any right of action thereon, but that
Brown is holding the same and asserting his rights
thereunder. (7) The answer then pleads the sale by
Sicher Bros. to Brown of the hotel appurtenances, fur-
niture and entire outfit, its value of $17,000, its peculiar
liability, on account of its character and use, to
breakage, loss and unreasonable depreciation, the cash
payment of $5,000 by Brown, the execution of the four

notes of $3,000 each for the unpaid purchase money, and the simultaneous execution of the chattel mortgage on said property in the form of a deed of trust by Brown to Lamm, trustee, to secure the same, the terms of the deed of trust making all the notes due on default of paying any one in accordance with its tenor and effect, or on the sale or attempt to sell the mortgaged property, or on any unreasonable depreciation in the value thereof, the power and duty of the trustee under the instrument, at the request of the holder of the notes, on the happening of any such contingency, to take the property, sell the same and apply the proceeds to the payment of the notes; that the notes were purchased by plaintiff, if at all, on the strength and faith of the signatures thereto and the security of the deed of trust; that the security was ample and would always have remained so if it had not been for the wrongful and negligent acts of plaintiff; that defendants, when they signed the bond, relied on plaintiff's preserving said security and exercising proper care and diligence in enforcing the same; that the conditions of the deed of trust were broken in various ways at divers times, as set forth, and hence the notes all became due and the property should have been taken and sold under the powers created in the deed; that plaintiff, with gross negligence and delay in asserting its rights under the trust deed, stood by for a long time and saw and allowed the incumbered property to become unreasonably depreciated, lost and rendered totally inadequate as security for the debt; that all this occurred after it was the right and duty of plaintiff to have caused a foreclosure; that when plaintiff long after the institution of this suit, to-wit: in September, 1887, assumed to foreclose the deed of trust, it realized out of the property only the mere pittance of $600; that plaintiff,

having thus lost by its negligence and wrongful conduct its once ample security, it would be inequitable to allow it to make up the deficit out of the sureties on Sicher's said bond; and that plaintiff had lost by its negligence and wrong doing any right of action it ever had on said bond, and all liability of the securities thereon to plaintiff, if any ever existed, has ceased.    The answer also set up that the notes were purchased at less than their face value and the discount was usurious, and that the amount of such discount could, in no event, be recovered.

The replication admits the execution of the chattel mortgage and the sale under the same for the amount alleged in the answers and put in issue all the new facts alleged.

At the trial the defendants objected to the introduction of any testimony for the reason that the petition did not state facts sufficient to constitute a cause of action, which objection was overruled and defendants saved the point by excepting.

The plaintiff, over the objection of the defendants, introduced two notes in evidence, dated March 15, 1884, signed by George T. Brown, payable to Sicher Bros. at the First National Bank, each for $3,000, with ten per cent. interest—one note due two years and the other thirty months from date.    These notes had not been filed with the petition.    One note was endorsed by C. Newkirk, J. C. Thompson and Sicher Bros. and also the following as the last endorsement:

"Pay J. C. Thompson, cashier, or order, for collection.

W. H. MORTON, Cashier."

On this note was a credit of $570, November 8, 1887.    The other note, the one due in thirty months,

the last in the series, bore the same names and endorsements except there was no credit, and there appeared thereon the following:

"Presentment and demand for payment, notice of non-payment and protest waived.

    [Signed.]                C. NEWKIRK.

                             J. C. THOMPSON.

                             SICHER BROS."

The petition was silent as to the other parties to these notes, Newkirk and Thompson, and that the waiver of presentment, demand, etc., was alleged in the petition to be on the note due in two years and not on the last note where it appears.

The plaintiff also introduced the bond, and offered no evidence as to the presentment, demand, notice of non-payment or protest of either of said notes, and offered no evidence of the charter power of plaintiff or its right to buy notes thereunder, or its title to the paper except as the same appears, if at all, on the notes themselves. It did not appear from the evidence in what capacity C. Newkirk, the president, and J. C. Thompson, the cashier, of the First National Bank, signed the notes on the backs thereof. Neither did it appear that the fact that these names were on the notes, was known to defendants until it was disclosed at the trial by their introduction in evidence.

The evidence showed that C. Newkirk and J. C. Thompson were solvent. The evidence was conflicting as to the insolvency of Frank Sicher and Brown.

The court found for plaintiff in the full amount of the notes, excepting only the $570 payment, allowing nothing on the $150 accrued interest deducted by plaintiff's agent, Thompson, nor the $1,000 paid him, in part, at any rate, in the matter of the sale of the notes, and allowed nothing for the loss and depreciation in

the mortgaged property caused by plaintiff's negligence in the premises and rendered judgment accordingly for the full penalty of the bond and awarded execution for $8,555.

Defendants filed their motion for new trial and in arrest, which being overruled, the case is here by appeal.

1. Defendants complain of the action of the court in permitting plaintiff to read in evidence against their objections certain notes, which they contend do not correspond with the notes described in the petition, and also in excluding the evidence offered by them to the effect that one Thompson had for years claimed to be the general financial agent of plaintiff and that this claim was known to plaintiff. Thompson had testfied as a witness in a suit on trial in the same court, and it was proposed to prove, that he stated on that occasion, that he was the agent of plaintiff.

As to the first objection, even if well taken, it is not error, for at most it was only a variance in the allegations in the petition and the notes offered, and could only be taken advantage of in the manner pointed out by sections 2096 and 2097, Revised Statutes, 1889, on the ground of surprise supported by affidavit, otherwise it is waived. *Meyer v. Chambers* 68 Mo. 626; *Fischer v. Max*, 49 Mo. 404. Nor did the court commit error in sustaining the objection to the evidence offered in regard to Thompson's statements because in the first place hearsay, and second, an agency cannot be proven by the admissions or statements of a supposed agent. Mechem on Agency, sec. 100; *Diel v. Railroad*, 37 Mo. App. 454.

2. Defendants also contend that the deduction of a thousand dollars by plaintiff through its agent, as a bonus, and also one hundred and fifty dollars accrued interest at the time it purchased the notes and which

defendants contend was usurious and should have been deducted by the court from the amount that it found plaintiff was entitled to recover. This contention does not seem to be sustained by the evidence and finding of the court, to whose finding we must in a great measure defer in cases of this character, and the evidence would not justify us in interfering in this regard.

3. A further contention is that the court should have sustained a demurrer to the evidence, because plaintiffs failed to prove that it had the authority under its charter to purchase the notes sued on. The petition alleges that the plaintiff is a corporation duly organized under the laws of the state of New Hampshire and is engaged in doing a general banking business. This is admitted in the answer. The question raised by defendant is not as to its corporate existence, but although it be a banking corporation, yet in the absence of any proof conferring upon it the authority to buy outright promissory notes, that it has no such power, none being implied, and the purchase of the notes in suit was *ultra vires*, and it cannot maintain this suit.

The supreme court of Minnesota, in the case of *Bank v. Baldwin*, 23 Minn. 198, held that the bank had no authority to purchase promissory notes and the attempted act of purchase was *ultra vires* and conferred no rights whatever. The court says: "The power to carry on the business of banking by discounting notes, bills and other evidences of debt, is only an authority to loan money thereon, with the right to deduct the legal rate of interest in advance. This right can be fully enjoyed without the possession of the unrestricted power of buying and dealing in such securities as choses in action and personal property. Though, as is urged by plaintiff, the bank acquires a title to discounted paper, and hence may, in a certain sense, be

said to have purchased it, yet it is a purchase by discount—which is permitted—and does not involve the exercise of a power of purchase in any other way than by discount." *Bank v. Pierson*, 24 Minn. 140. And in the case of *Bank v. Baker*, 15 Ohio St. 68, it was held, that "a power given to a corporation by a statute of the state of New York 'to carry on the business of banking by discounting bills, notes and other evidences of debt,' is not a power to *buy* promissory notes, but to *loan* money upon the paper described, and that a transaction of that character is within the usury laws of that state."

In *Fleckner v. Bank*, 8 Wheat. 338, it appeared that the plaintiff purchased from another bank a note which had been passed to it through several parties from the original holder. The bank was forbidden to deal in anything except bills of exchange, gold, or silver, or take more than six per cent. upon its loans or discount. It was claimed by defendant that the purchase of the note was *ultra vires;* but the court held that it was not, and that such purchase was but a discount. In the opinion, STORY, J., speaking for the court, says: "But in what manner is the bank to loan? What is it to discount? Has it not a right to take an evidence of the debt, which arises from the loan? If it is to discount, must there not be some chose in action, or written evidence of a debt, payable at a future time, which is to be the subject of the discount? Nothing can be clearer than that by the language of the commercial world, and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or draw-back made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank."

In the case of *Smith v. Bank*, 26 Ohio St. 141, the defense was that the bank (a national bank) purchased the paper of the payees, and that it had no authority to make such purchase. Upon this question the court says: 'It does not state that the purchase was made at a usurious rate of discount; but it avers that under the act of congress to provide a national currency under which the bank was incorporated, it had no authority to *purchase* the bill. It seems to be the idea of counsel making the objection, that negotiable paper perfect and available in the hands of the holder, is not the subject of purchase by a national bank at any rate of discount. This view, we think, entirely erroneous. We see nothing in the act of congress, nor in reason, why a borrower may not obtain the discount by a bank of the existing notes and bills of others of which he is the holder, as well as of his own paper, made directly to the bank. It is true, that, as between natural persons, the purchase of such paper, when made in good faith, and not as a disguise for a loan, is not subject to the usury laws; but it is otherwise as to a bank. In the business of banking, the purchasing and discounting of paper is only 'a mode of loaning money.' ''

In the case of *Pape v. Bank*, 20 Kan. 440, bottomed on notes secured by mortgage which defendant had bought outright, and did not acquire them by reason of having made a loan of money, BREWER, J., in speaking for the court says: "Again, the power granted is the naked power of discounting. * * * And the term 'discounting' includes purchase, as well as loan. 'To discount signifies the act of buying a bill of exchange, or promissory note, for a less sum than that which upon its face is payable.' 1 Bouvier's Law Dictionary, title *discount*). It is also undeniably clear, that the term *discount* when used in a general sense, is

equally applicable to either business or accommodation paper, and is appropriately applied, either to *loans* or *sales* by way of discount, when a sum is *counted off*, or taken from the face or amount of the paper, at the time the money is advanced upon it, whether that sum· is taken for interest upon a loan, or as the price agreed npon a sale.' *Bank v. Baker*, 15 Ohio, St. 85, and *Fleckner v. Bank*, 8 Wheaton, *supra*." See also Morse on Banks and Banking, sec. 72; *Tracy v. Talmage*, 18 Barb. 462; *Bank v. Sherburne*, 14 Ill. App. 566.

It is true that it is held by this court in the case of *Bank v. Simpson*, 1 Mo. 184, that the plaintiff, a corporation created under the laws of the state of Illinois, could not under its charter, so deal in promissory notes as to become the purchaser thereof. But its charter, the court says, "restrains the bank, generally, from dealing or trading, *except* in bills of exchange, gold or silver, or in the *sale* of goods, pledged for money lent, or which shall be the proceeds of its lands." It will be observed that the decision in this case is based altogether upon the restrictions in plaintiff's charter, which was before the court, and incorporated in the bill of exceptions. No such restrictions are shown to have been placed upon plaintiff's power as a banking institution. It seems then from the authorities herein cited that plaintiff under its charter had the power, nothing appearing to the ·contrary therefrom, to buy outright the notes sued on, but it had no right to so purchase them at a greater rate of discount than the rate of interest it might lawfully charge for the loan of that money, or if it had discounted the notes instead of buying them and it did so, the amount of discount in ·excess of the lawful rate of interest is usurious. We · conclude therefore, that the purchase of the notes in question

was within the powers granted to the plaintiff, and that in so doing the transaction was not *ultra vires*.

4. The petition should have set out the re-sale of the hotel property and the execution of the bond sued on to Brown to secure the payment of the notes executed by him to Sicher on the original purchase by him of it from them.  But as no objection was taken to it by demurrer we are inclined to think it good after judgment.  The court must have found that the evidence showed these facts before it could have rendered judgment for plaintiff on the bond and. the evidence clearly shows such to have been the case.

The petition sets forth the bond *in hæc verbæ*, the conditions thereof, and then assigns the breaches.  It is unlike the declaration in the case of *Moore v. Platte Co.*, 8 Mo. 467, which did not aver that the defendant executed the bond to anybody.  In the case in hand the petition distinctly avers that defendant executed and delivered to George T. Brown a written obligation or bond, then sets out the bond.  It also avers that the makers of the notes are insolvent.  It is true that it might have been more specific, but under the Code there is an important distinction in a petition which states no cause of action at all, and one which defectively states one.  At the most the petition sets forth a cause of action defectively stated, not a defective cause of action, and is good after judgment.  *Edmonson v. Phillips*, 73 Mo. 59; *State ex rel. v. Rush*, 77 Mo. 586; *State ex rel. v. Williams*, 77 Mo. 467.  And if the facts necessary to constitute a cause of action are to be inferred from the petition taken as a whole, though informal in some of its parts, it is good after verdict. *State ex rel. v. Williams* and *Edmonson v. Phillips, supra;* see also, *Hirt v. Hahn*, 61 Mo. 496; *State to use v. Clark*, 42 Mo. 519; *Schultz v. Ins. Co.*, 57 Mo. 331; Section 2113, Revised Statutes 1889, clauses 8 and 9.

5. A further contention on the part of defendants is that there is no privity of contract between plaintiff and defendants; no consideration for the bond, and that Brown, not having paid anything himself, is not damnified and that plaintiff who seeks to recover on the bond has no greater right than he had, and therefore cannot recover. This, we take it, depends altogether upon the construction of the bond. If simply a bond of indemnity, defendant's position is correct, but if an obligation to pay and discharge the notes described therein and herein sued on, the law is thought to be otherwise. The defendants bound themselves to pay $1,500, upon condition as follows: "Now, if the said Joseph D. Sicher shall well and truly pay each and all of said promissory notes, with all interest thereon, as the same mature, and fully satisfy all of said notes and discharge the same according to the letter and effect thereof. * * * And any liability, loss or payment occasioned to said George T. Brown, his heirs, administrators or executors, on account of the default by said Joseph D. Sicher, in the payment of any of them, or the interest thereon, shall be a breach of this bond, and the subject of an action hereon, without any release or discharge as to the balance of said notes or any part thereof."

The difference between a bond of indemnity and a bond obligating the obligors to do a certain thing is very clearly pointed out in the case of *Ham v. Hill,* 29 Mo. 277. The bond sued on in that case contained almost the exact covenants that are contained in the bond here sued on. That bond contained the following conditions: "That whereas the said John H. Hill having purchased the interest of the said James R. Ham, in the firm of Ham & Hill, in the carriage business in the city of Boonville, Missouri, and has agreed with the said Ham to assume all partnership liabilities

of the said firm incurred between the first day of April,. 1858, and the first day of July, 1858, and to pay the same whenever payment is demanded legally by the creditors of said firm. Now if the said Hill shall observe and keep said agreement and pay said debts. in manner and form above prescribed, then this bond to be void, otherwise to remain in full force." It was held by the court to be a bond with affirmative covenant to do a certain thing, and that the obligee therein did not have to wait before bringing his suit to be damnified.

So in the case of *Rowsey v. Lynch,* 61 Mo. 560,. plaintiff and defendant had been in partnership, when. plaintiff sold out his interest in the firm of Lynch & McCadden and entered into an agreement under seal with them which contained the following stipulation: "Said Lynch and McCadden also agree to pay off and discharge all the liabilities of the late firm * * * on the first day of January, 1855, and of which a schedule. was made at that date, on the formation of the new co-partnership of Rowsey, Lynch & Co." This was. held not to be a contract of indemnity but an affirmative covenant to pay certain sums of money at specified times, and that a right of action arose in favor of plaintiff upon the failure of defendant to pay at such times, and that in the absence of any designated time at which payment was to be made, the law will imply an obligation to pay when payment should be lawfully demanded.

When Brown resold the hotel property to Sicher,. and the latter in consideration of the sale covenanted to pay the notes sued on which were executed by Brown. to him, Sicher became immediately in contemplation of equity the principal debtor, and Brown assumed toward him the relation of surety. In the case of *Burnside v. Fetzner,* 63 Mo. 107, Fetzner and Bell were

partners in business and became indebted to Burnside in the sum of $1,687,50 evidenced by their note for that sum, secured by deed of trust on the land of Fetzner. Afterwards the latter purchased Bell's interest in the firm, giving a bond to Bell, with defendants King and Desmond as his sureties, conditioned to pay off and discharge all the debts and liabilities of the firm and to save Bell harmless respecting the same.   This bond was executed and delivered upon a valuable consideration, the assumption of the indebtedness of the firm being a part of the consideration by means of which the purchase of Bell's interest was effected.   The firm failed, and did not pay the debts.   Burnside brought suit on the bond, and this court held—SHERWOOD, J., speaking for the court—that "the doctrine that a surety may avail himself of securities executed in behalf of and for the benefit of the creditor, and that the latter may also resort in like manner to similar instruments given for the protection of the surety, is too well settled, both on reason and authority, to admit of question.   (1 Story on Equity Jurisprudence, secs. 327, 499, 502, 637, 638a; *Haven v. Foley*, 18 Mo. 136, and cases cited; *Homer v. Savings Bank*, 7 Conn. 478, and cases cited; *Vail v. Foster*, 4 Comst. 312).   And no doubt is entertained that Bell stood in such an attitude towards Fetzner as to really admit and authorize the application of the principle referred to.   Thus it had been held * * * where notes are signed by three persons for a joint debt, each is a principal for one-third, and a co-security for the other two-thirds.   (*Goodall v. Wentworth*, 20 Me. 322, and cases cited.)"

*In the matter of Negus*, 7 Wend. 499, SAVAGE, C. J., in considering a covenant made by one partner to another, to pay the debts of the firm, and also to indemnify the obligee, said:   "Where indemnity alone is expressed, it has always been held that damage must be

The Salmon Falls Bank v. Leyser.

sustained before a recovery can be had; but where there is a positive agreement to do the act which is to prevent damage to the plaintiff, then an action lies, if the defendant neglects or refuses to do such act; and where the covenant is both to do the act and to indemnify, we must resort to the intention of the parties."

Whatever views may be entertained by other courts, the weight of authority is most unquestionably that bonds containing like conditions and obligations as the one here sued on are bonds with direct covenants and are not bonds of indemnity. It will be seen from the authorities cited that there is ample equity to support this proceeding, and that there is nothing in the point that there was no privity between the plaintiff and the obligors on the bond. The case of *Manny v. Frasiers' adm'r*, 27 Mo. 419, has long since ceased to be regarded as authority, or to be followed by this court.

6. It is also contended by defendants that plaintiff has no right of action on the bond until it has exhausted all its remedies at law, and all the parties on the notes held by it had been shown to be insolvent. There is no question but this position would be correct if the bond were one of indemnity, but as we have held that it is one of direct covenant to pay, the great weight of authority seems to be adverse to defendant's contention. The same rule does not obtain as in a creditor's bill. The case of *Humphreys v. Milling Co.*, 98 Mo. 542, was of this character, and it was there held that "the rule is general that before a creditor can maintain a creditor's bill he must show that he has exhausted his remedy at law, or that he has no adequate remedy at law;" but the court also says that there are exceptions to this rule. Creditors' bills are bills in equity filed by creditors for the purpose of collecting their debts out of the real or personal property

of the debtor, under circumstances in which the process of execution at common law could not afford relief, (Bisphan on Equity, sec. 525,) and are generally to remove some obstruction fraudulently or inequitably imposed to prevent a sale of the debtor's property on execution at law, or to obtain satisfaction of his debt out of property of the defendant which cannot be reached by execution at law, hence the necessity of alleging and proving the insolvency of the parties primarily or originally holden for the debt.

In the case of *Jones v. Bank*, 29 Conn. 25, relied on by defendants, it was held, where a mortgage is given not to secure a debt, but *to indemnify a surety*, then the security does not in the first instance attach to the debt, as an incident to it, but whatever equity may arise in favor of the creditor with regard to the security arises afterwards, and comes into existence only upon the insolvency of the parties holden for the debt. See to the same effect Sheldon on Subrogation, secs. 160, 161, 162–188, 198.

In *Kinsey v. McDearmon*, 5 Cold. (Tenn.) 396, the court says: "The law is well settled that an indemnity or collateral security, given by a debtor to his security, inures to the benefit of the creditor, who may file a bill to subject it in equity, without first obtaining a judgment at law; and it makes no difference whether the principal acted on the credit of such security or indemnity in the first instance or not, or ever knew of its existence." Sicher and his securities on the bond were jointly liable with the latter to the holder of the notes, which the bond obligated them to pay, and they could well have been sued jointly in equity. *McMillan v. Bank*, 32 Ind. 11; Story's Equitable Jurisprudence [12 Ed.], sec. 502; *Osborn v. Noble*, 46 Miss. 449.

When a surety, or one standing in that position, for the payment of a debt, receives security for his

indemnity or to discharge such indebtedness, the principal creditor is entitled to the security, although he may not have given credit on the faith of it or known of it at the time (*Rice's Appeal*, 79 Pa. St. 168; *Saylors v. Saylors*, 3 Heiskell 525; *Seibert v. True*, 8 Kan. 52), and this is so, although Sicher and all others on the notes described in the bond here sued on were solvent. *Seibert v. True*, 8 Kan. 52.

It seems clear both from reason and authority that the proceeding should be in equity as in the case in hand. And that it makes no difference that the bond had not been executed and was not, in fact, in existence at the time plaintiffs purchased the notes, as when executed it inured to its benefit, and a right of action in equity accrued to it, whenever executed, and default was made in the payment of the notes or any of them.

7. It is also claimed by defendants that they should be allowed a credit on the bond, even if liable thereon in this proceeding, for the amount of depreciation in the value of the mortgaged property after condition broken, and which arose from the negligence of plaintiff in not having the property sold under the mortgage after forfeiture, according to the terms of its provisions. There is no evidence of depreciation of the property, except that which was incident to the ordinary use in a hotel. Nor do we understand that there is any such contention on the part of defendants, and plaintiff never at any time refused to have the property sold under the mortgage, nor was in fact any such request ever made by any of the parties interested. Nor is it contended that it ever did any positive act in connection with the mortgaged property to the injury of the principal debtors or their securities. There was no willful act, or unnecessary or improper act on the part of the plaintiff in connection with the mortgaged property by which it was injured or depreciated in value,

and unless such was the case, plaintiff cannot be held responsible for any loss occasioned to defendants by reason of the failure of plaintiff to have it sold when default was made in payment of the notes as provided by the mortgage. When sold it only brought about $600, which was applied as a credit on the notes.

In the case of *Schroeppell v. Shaw*, 3 Comstock, 446, in a well considered opinion, the court held that the passive neglect of the creditor (there being no request on the part of the surety) to enforce the bond and mortgage, afforded no ground to relieve the surety, even in equity, although the neglect continued for a long time, and the value of the security was thereby lost; that the obligors were first in default in not liquidating the debts according to promise, and in not directing the creditor to foreclose the mortgage. Mere delay on the part of the plaintiff in foreclosing the mortgage did not amount to laches. Story's Equity, secs. 324, 326; *Pickens v. Finney*, 12 Smedes and Marshall, 468; *Clopton v. Spratt*, 52 Miss. 251; *Johnson v. Bank*, 4 S. & M. 165.

It seems, however, that if the creditor unreasonably delays to enforce securities held by him, or acts in bad faith, or is grossly negligent, whereby the value of the securities is impaired, the loss thus occasioned is a defense, to that extent, available to the sureties; but mere delay will not suffice to discharge them. *Bank v. Page*, 44 N. Y. 453. The authorities cited by counsel as announcing a different rule are all cases where there was some willful, careless or negligent act of the creditor in consequence of which the security was lost or depreciated in value, or where the creditor was directed to proceed to realize from the security, and failed to do so, and by reason of which the debtor or surety was injured. Plaintiff did nothing to depreciate the value of the mortgaged property, and its failure to sell did

not make it liable for depreciation in its value. The finding of all the facts were against defendants, and we cannot say that it is unsupported by the evidence. Much is always deferred to the finding of the trial court in cases of this kind, and we cannot depart from the rule in this case.

We have been furnished with most excellent and exhaustive briefs by counsel in this case, which evince a thorough investigation of the questions involved, and great research and industry in the collection and citation of authorities bearing thereon.

The case seems to have been well and fairly tried, and, being unable to perceive any error in the trial or record, the case must be affirmed, and it is so ordered. All concur.