Seibert v. True.

GEORGE W. SEIBERT, *Assignee*, v. JAMES F. TRUE, *et al.*

1. PRACTICE—*Reviewing Evidence in Equity Cases.* The change made by the code in the manner of taking testimony in equity cases, compels a corresponding change in the duties of a reviewing court in such cases; and the evidence will be examined, not as on the original trial, but to see if it so far sustains the findings of the court that we cannot say they are wrong.

2. SURETIES; *Securities held in Trust.* A surety holds all securities he may take for his own indemnity in trust, not only for the other sureties, if there are any, but for the creditor also, until the debt is paid, so long as the trust fund can be reached. Nor does it make any difference that the creditor did not originally rely upon the credit of such collateral security, or know of its existence.

3. EVIDENCE—*Proof of Death.* The grant of letters of administration is

*prima facie* evidence of the death of the person on whose estate administration is allowed.

4. ————— *Exceptions—Record.* A reviewing court cannot notice exceptions to evidence where the record does not contain the evidence excepted to.

5. ERROR—*When to be disregarded.* Error in admitting incompetent evidence, which is also immaterial, and clearly did not tend to predjudice the party objecting thereto, is not cause for reversing the judgment.

### *Error from Douglas District Court.*

GEORGE W. SEIBERT as assignee of W. H. R. Lykins brought suit against *James F. True* to recover $1,880.67 for thirty-seven head of cattle sold by Lykins to *True* in October, 1867. *True* answered, admitting that he was indebted in the amount claimed in the petition, alleged his readiness to pay, but stated that *R. W. Sparr*, as administrator of George A. Matthews, deceased, claimed an interest in said sum, and prayed that said *Sparr* be joined as defendant, and his interest, if any, be ascertained. Afterward said *Sparr* as administrator, and one *M. S. Winters*, were joined as defendants. *Sparr* answered, that said Matthews, in his lifetime, owned said thirty-seven head of cattle; that Matthews had mortgaged or pledged thirty head thereof to said Lykins, giving him a bill of sale thereof, as security to indemnify Lykins for indorsing a note given by Matthews to one Driskell for $1,325; that Lykins was authorized to sell said thirty head, and out of the proceeds pay said note; that the sale by Lykins of the other seven head was wholly unauthorized; that Matthews was dead, and that he (*Sparr*) had been duly appointed and qualified as administrator, etc.; that since his said appointment he had ratified the sale of said cattle; and admitting his liability, as administrator, to pay said note to Driskell, said *Sparr* claimed the whole of said sum of $1,880.67. *Winters* answered that he was the assignee and owner and holder of said note of $1,325, given by said Matthews to said Driskell, and indorsed by Lykins; that said Lykins had paid him to apply on said note $250; that the balance of principal and interest remained unpaid; that as said thirty head of

cattle had been pledged to secure the payment of said note, and their sale authorized to pay the same, he was entitled out of the money so due and owing by said *True*, to receive such sum as would satisfy said note and interest; and he prayed that said purchase money should be adjudged to be a trust fund in the hands of *True*, and that said *True* be directed, first, to pay the plaintiff, as assignee of Lykins, $250; next, the defendant *Winters* the balance due on said note; and the balance to *Sparr*, as administrator. *Seibert* replied, alleging a large indebtedness by Matthews to Lykins at the time said bill of sale was executed.

The case was tried at the September Term, 1868, of the district court. A jury being waived, special findings of fact were made, and judgment entered thereon, ordering and directing defendant *True* to pay to plaintiff *Seibert* $312.78, and to defendant *Winters* $1,211.82, the balance of principal and interest on the Driskell note, (said two sums being the proceeds of the sale of the thirty head of mortgaged cattle;) and said *True* was further ordered to pay to *Sparr*, as administrator, $356.07, the proceeds of the seven head of cattle not included in the chattel mortgage. The findings of fact are set forth in full in the opinion of the court. *Seibert* excepted to the findings and judgment, and his motion for a new trial being overruled, he brings the case here by petition in error for review. The bill of exceptions contains the evidence given on the trial, and it appears therefrom that Matthews was owing Lykins $650 on bank account at the time he gave Lykins the bill of sale of the thirty head of cattle.

*Thacher & Banks*, for plaintiff in error:

1. This action has been resolved into an action in the nature of a suit in equity, for a decree appropriating funds in the hands of defendant True on the claims, respectively, of plaintiff, defendant Winters, and defendant Sparr as administrator.

Sec. 542 of our code gives the supreme court power to reverse, vacate, or *modify* judgments and orders; and § 559 gives power

to "render such judgment as the court below should have rendered." This is but re-establishing, by special statute, the power of a reviewing court of chancery: 7 Page, 87; 1 Van Sand. Eq. Pr., 666.

These provisions (code, §§ 542, 559,) confer upon the supreme court the full powers exercised by the reviewing courts of chancery. In equity suits, where the trial is by the court or referee, and exceptions preserved as to the findings of fact, the appeal is, not from the order granting or refusing a new trial, as it is in jury cases, (1 Van Sand. Eq. Pr., 673; 5 Duer, 559; 16 How., Pr. 385,) *but is from the whole judgment:* 1 Van Sand. Eq. Pr., 674, 698; 7 How. Pr., 10; 11 id., 456; 3 Kern., 341; 7 Abb. Pr., 32; 26 Barb., 603.

Where the record sets forth the evidence on both sides, the court may review the facts in equity cases: 1 Van Sand. Eq. Pr., 704. The whole case is open to the appellant. 3 Johns. Ch., 587; 2 Dan. Ch. Pr., 1566, 1564. Where the appeal is against the whole decree, the cause is actually reheard; that is, the pleadings are reopened and proceeded with as if it were an original hearing. Depositions, and all the evidence introduced on the original hearing, will be heard as on trial, and the case decided thereon. 2 Dan. Ch., 1564, 1583; 5 Paige, 166; 2 Yerg., 140; 6 Johns. Ch., 555; 14 Wend., 662; 1 Irish Eq., 472; 8 Paige, 479; 3 Story C. C., 299; 2 B. Mon., 231, 233; 2 Head, 289; 5 Wheat., 424; 2 Iowa, 20; 8 Wis., 1.

In reviewing the case at bar, then, the court will view the evidence introduced in the court below as though the case was being originally tried before this court. The record purports to contain the whole of the evidence. It is contended that the *weight* of evidence must sustain the findings of fact and the decree, or else the latter must be reversed or modified as to be equitable.

2. The bill of sale to Lykins was absolute on its face, and purported to be for $1,500 consideration paid. At this time Matthews owed Lykins $650; and when he went away he owed Lykins on account $1,700. Lykins had a right to the proceeds of the sale of the cattle to satisfy the debt due him.

The bill of sale was not in its inception intended *merely* to indemnify Lykins on signing the note. The record shows that Lykins advanced $250 which Matthews paid on the cattle transferred in the bill of sale. The only evidence, outside the writing, as to the intention of the parties on its execution is that of Lykins who swears that it was given to secure him " on *the money advanced,* and on the note." " It was agreed between Matthews and me that I should sell the cattle, *pay myself* the money advanced, and take up the Matthews note." " There was no understanding that the *particular money* received from the sale of the cattle was to pay the note when I realized on the cattle."

The record shows that Lykins not only advanced $250 on the original purchase of the cattle, but also paid to Winters on the note $250 more. The plaintiff, as assignee, was entitled to said sum of $500, and the interest, ($542.30.) The judgment in favor of plaintiff on this branch of the case should have been for that, at least.

3. At the time of assignment by Lykins to plaintiff the title to the cattle, or the money due on their sale, was, as between him and Matthews, in Lykins. Winters recognized this fact by asking Lykins to pay the note, and is now estopped from asserting that the fund is a trust fund; at all events the burden was clearly on Winters to show that the title was not in Lykins.

True first *receipted* to Lykins (in April) for the whole thirty-seven head, and this receipt, (as shown by the evidence) was witnessed by " Geo. A. Matthews." In October, True *bought* the cattle of Lykins, who had them in his absolute control up to the time of their sale by virtue of a bill of sale, and had power to sell, and did sell, in his own name, as his own property, and charge the amount to True; and his assignee, the plaintiff in error, is entitled to the money.

4. The court erred in giving judgment in favor of Sparr for the proceeds of the sale of the seven head of cattle. Lykins had them in his possession, claiming to own them, and sold them as owner. The presumption was that he was the owner.

There is no testimony in the record referable to any cattle except those included in the " bill of sale; " and these seven head were *not* in the bill of sale at all. The receipt given by True, and signed by Matthews as a witness, is, " Received of Wm. H. R. Lykins thirty-seven head of work cattle," etc. This is conclusive evidence against Matthews that at *that time Lykins owned* the seven head; and there is no evidence that Matthews purchased them at any time subsequently.

*Riggs, Nevison & Foote,* for defendants Sparr:

1. Unless the decision of the court is manifestly against the evidence, or *wholly without evidence,* the court will not set it aside. 2 Nott & McCord, 261; 1 Conn., 134; 13 Wis., 675; 11 Conn., 440.

A decision of the court may be set aside by a reviewing court, " but such power ' should be delicately and cautiously exercised. It should be a case of clear and flagrant injustice, where the preponderance is decisive, and upon which the mind may rest with unwavering confidence." 3. J. J. Marsh., 390; 19 Conn., 319; 2 Gilman, 358.

In order to authorize a new trial, or the setting aside of the judgment of a court upon the ground that the verdict or judgment is contrary to the evidence, it is essential that it should not only be against the weight of evidence, but that it should be so much so as on the first blush of it to shock the sense of justice and right. 2 Ark., 364; 1 Eng., 87: 2 id., 174.

A judgment will not be reversed or set aside, where there is evidence *tending* to support it. 13 Ind., 272, 479; 24 Ill., 286; 37 Barb., 520; 5 Minn., 339; 9 Cal., 94; 18 Ark., 396.

The supreme court will not reverse or set aside a judgment merely for the reason that it would have been better satisfied with a different one. 29 Ill., 487; 15 Ind., 326: 27 Barb., 337

2. The bill of sale to Lykins was only a mortgage or pledge of the property as a security. Lykins testifies — " The bill of sale was given to me to cover the cattle transaction. It was

4

agreed between myself and Matthews that, when I realized on the cattle I should pay the Driskell note out of the proceeds."

"A bill of sale, absolute on its face, transferring property to be held as security for the payment of a debt, is in character and effect a mortgage, and is to be treated as such. 31 N. Y., 542.

But it is contended that, at the time the bill of sale was made, Matthews was owing Lykins $650, and that this sale was made to secure that sum also. Now, that proposition is sustained by no testimony; it is contrary to the testimony of Lykins himself. He says it was to secure the money he "had advanced;" but there is no evidence in the case that the $650 indebtedness was for money he had advanced. When speaking of the money advanced, he mentioned only the $250 which Matthews had paid on the cattle.

The court could make no other finding than that the bill of sale was simply a chattel mortgage in favor of Lykins, and was for the sole purpose of securing him as surety on said note and the $250 advanced by him to Matthews, and that no other consideration passed; that Matthews was the real owner, subject to the lien of Lykins under the mortgage. The property being taken by Lykins for the purpose of securing the payment of the note it was pledged to Driskell, and to Winters as the indorsee of the note, as well as to Lykins for the security specified. The holder of the note could not be deprived by Lykins of his lien on said property, without consent, unless the property passed to an innocent purchaser without notice; and then, any money in the hands of the purchaser would be subject to the payment of the note the bill of sale was made to secure. The security in equity attaches to and follows the debt, and the creditor may claim in chancery the benefit of of every security, aid or means of payment which the law or the providence of the debtor has provided for its payment. 4 Johns. Ch., 130.

If a surety has any security from the principal, the creditor will be entitled to the benefit of it, and may in equity reach

such security to satisfy his debt.  1 Story Eq. Jur., § 502; 37 Penn. St., 71; 31 N. Y., 9.

3. The testimony clearly showed that Matthews was the owner of the seven head; and the court so found.  This court will not disturb the finding for want of evidence to sustain it.

4. The plaintiff claims that the court erred in admitting as evidence the letters of administration offered in evidence by the defendant Sparr.  The letters of administration were evidence of themselves to show that Matthews was dead, and no further proof of that fact was necessary.  1 Greenl. Ev., § 550; 2 id., §§ 278, 354; 10 N. H., 242; 3 Esp., 63.

The opinion of the court was delivered by

KINGMAN, C. J.:   This was an action brought by Seibert as the assignee of William H. R. Lykins against James F. True. By the pleadings it became in effect an interpleader to ascertain who was entitled to the money, True admitting that he owed it to somebody, and asking the court to determine to whom he should pay it.  The case was tried by the court, and special findings of fact made, and judgment entered accordingly.

The counsel for plaintiff in error ' claim that this is a chancery case, and that this court must proceed with it as though it was an original case, and inasmuch as all the evidence is in the record, this court must proceed as the court of 1. Practice, on review formerly did on appeals in chancery cases, appeals, in equity cases. and, disregarding the findings of the court below, examine the evidence as though it was originally given in this court.  The counsel overlooks a material change made in the code as to the manner of taking evidence in chancery cases, a change which compels corresponding action on the part of this court.  In chancery cases, before the code, all the evidence was originally presented to the chancellor in writing, and the reviewing court had the same opportunities to form an opinion on it that the chancellor had.  But under the code the court, when it tries a case hears oral testimony, and has the same opportunities to judge of the credibility and weight of testi-

mony that a jury has. The court, like a jury, sees the witness, observes his intelligence, his leanings, and his manner as a witness, and can thus form a more correct judgment of the value of the testimony than this court can. Therefore this court will not set aside the findings of a court, even in an equitable proceeding, unless from an examination of the record we are able to say that the findings are wrong. A careful examination of the evidence in this case authorizes us to say that the findings are amply supported by the evidence.

The findings will be of themselves a sufficient history of the case to enable the reader to understand the decision of this court. They are as follows:

"On or about the 17th of April, 1867, George A. Matthews purchased of one Michael Driskell thirty head of cattle, and paid part of the purchase money to said Driskell, and gave his note for the sum of $1,325 for the balance due, payable to the order of said Driskell in ninety days after date, with interest. The note was dated April 17th, 1867. Of the cash payments made by said Matthews to said Driskell on said cattle, the said Wm. H. R. Lykins advanced to said Matthews the sum of $250, and said Lykins signed said note of $1,325, jointly with, and as the security of, said Matthews, and took from said Matthews a bill of sale for said thirty head of cattle. Said bill of sale is absolute on its face, and purports to be for the consideration of $1,500; but it was intended and considered by the parties as a chattel mortgage, and as a security for the said $250 advanced by said Lykins, and also to indemnify him as the surety on said note, and no other consideration passed. Matthews owned and possessed seven other head of cattle, not included in said chattel mortgage, making in all thirty-seven head of cattle owned by said Matthews. On or about the 1st of May, 1867, Matthews employed the True Brothers to herd and take care of said cattle, and the said True Brothers gave a receipt for the thirty-seven head of cattle in the name of W. H. R. Lykins. The True Brothers took charge of said cattle, and in a few days thereafter Matthews went south to Texas, to purchase cattle, and has never returned to this section of the

state. About the last of June or first of July, Lykins said he had a letter from said Matthews directing the cattle to be sold and the money applied to the payment of said note to Driskell. Before said note fell due it was purchased by defendant Winters, of Driskell, who indorsed and transferred it for a full and valuable consideration. Lykins paid on said note to the said defendant Winters, shortly after the same fell due, the sum of $200, and $50 in October, 1867, making in all $250. The court find that the balance of said note, with the interest thereon, is due to the said defendant Winters, amounting to the sum of $1,211.82. The court further find that after the death of said Matthews, and on or about the 4th of October, 1867, said Lykins sold the thirty-seven head of cattle to the defendant James F. True for the sum of $1,880.67, which said sale has since been duly ratified by the said R. W. Sparr, administrator of the estate of the said George A. Matthews deceased; and that said sum of money is now in the hands of the said True, to be paid over to the parties entitled thereto; that of this sum $1,524.60 are the proceeds of the cattle embraced in said chattel mortgage, and $356.07 thereof are the proceeds of the balance of said cattle, after paying all expenses. The court find that the said Winters repeatedly called on said Lykins for the payment of said Driskell note, after the same became due; that the said Lykins promised the said Winters to pay said note, and lift the same, as soon as the cattle embraced in said chattel mortgage were sold. The court further find that at the time of the sale of said cattle to said True, as aforesaid, the said Matthews was dead; and that after the death of the said Matthews the said Sparr was duly appointed administrator of his estate, by the probate court of Douglas county, and qualified as such; that on the 10th of October, 1867, said Lykins made a general assignment of all his property, debts, claims, and choses in action, including said claim of $1,880.67 against said defendant True, unto the plaintiff Seibert for the benefit of the creditors of said Lykins, without preference; and that said defendant True has been

garnisheed on said claim at the suit of Wm. Rosenthal v. W. H. R. Lykins in the district court of Franklin county.

"Upon these facts the court find as matter of law, that the plaintiff Seibert is entitled to a judgment against the said True for the sum of $312.78, the balance of the proceeds of the mortgaged property, after paying the said Winters the amount due on the said Driskell note; that the said Winters is entitled to a judgment against the said True for the sum of $1,211.82, the amount now due ·of principal and interest on the said note to Driskell, and assigned to the said Winters; that the said Sparr, as administrator of the said Matthews deceased, is entitled to a judgment against the said True for the sum of $356.07, the proceeds of said cattle not included in said chattel mortgage." Judgment was rendered accordingly, to be suspended as to Seibert until the garnishee suit of Rosenthal should be determined.

As the claims of Winters and Sparr rest on a different basis, they necessarily require a separate examination; and Winters' claim will first receive our attention. In answer to observations made by the counsel for plaintiff in error, we will remark that the whole evidence places Winters' claim in a more favorable light than the findings of the court, as it has impressed us. Lykins' testimony is full on this point; not only his representations to Winters, when the note was due, that the cattle were to be sold to pay the note, but he testifies that "It was understood between Mr. Matthews and myself, that when I realized on the cattle I should pay the Driskell note out of the proceeds." It is true that he elsewhere states that the $250 advanced to Matthews to pay Driskell on the cattle was a part of the consideration for which the bill of sale was made, and this is doubtless. true; nor are the statements at all conflicting. It was unquestionably thought the proceeds of the sale of the cattle would pay what they cost; that is, both amounts. The fall of the value of cattle disappointed both parties. There was a loss. The testimony is reconcilable only on the hypothesis that the Driskell note was first to be paid. Such a view harmonizes the testimony of Lykins with

itself, and with the testimony of Winters as to the representations made to him by Lykins when the note became due. While we have thus gone beyond the findings, to the evidence, our decision will be based on the findings only. We can go behind the findings to see that they are supported by the evidence; and when that fact is ascertained we look to them to them to see if they support the judgment.

The law of the case is, that a surety holds all securities that he takes, in trust, not only for the other sureties, if there are 2. Securities held in trust. any, but for the creditors also, until the debt is paid so long as the trust fund can be reached. 1 Story Eq. Jur., §§ 499, 502; *New Bedford Institution for Savings v. The Fairhaven Bank,* 9 Allen, 175; *Moses et al., v. Murgatoyd, et al.,* 1 Johns. Ch., 119; *Phillips v. Thompson,* 2 J. C., 418. In *Ten Eyck v. Holmes,* 3 Sanf. Ch., the vice-chancellor says: "This principle was settled a century and a half ago;" and for a recent illustration of it refers to *Curtis v. Tyler and Allen,* 9 Paige, 432. This last cited case holds the principle fully. See also the note to *Deering v. Earl of Winchelsea,* in 1 Leading Cases in Equity, 162, 163, 164, where the authorities sustaining this doctrine are collated. Nor does it make any difference that the creditor did not rely originally upon the credit of such collateral security, or know of its existence.

Applying this principle to the case before us, and it clearly sustains the decision of the court as to the claim of Winters as against Lykins; and his assignee is in no better position. It is further urged that there is no proof of Lykins' insolvency, and no finding of any such fact. It is in proof that he had made an assignment of all his property, including the fund in controversy, for the benefit of his creditors; and that fact is found by the court. Whether this is *prima facie* evidence of insolvency, we need not determine, for Winters' rights were not dependent upon that fact. (See *Curtis v. Tyler and Allen, supra.*) Winters was not bound to wait until the fund went into the hands of the assignee, and assert his rights there. It was a better time for all parties

to settle the disputed questions in this action.   Winters was entitled to the payment of his debt in full, if the sale of the cattle mortgaged was sufficient.

Sparr's claim, as administrator, rested on a much simpler foundation.   Matthews owned the seven head of cattle—had always owned them since he bought them; and the testimony is clear that they remained his at the time of his death.   Such being the case, and his administrator having ratified the sale made by Lykins to True, was entitled to the money for which they were sold.   Lykins' possession of these seven head, (if such a fact is to be assumed from the receipt given from True to Lykins, and witnessed by Matthews,) was only as agent for the sale of them; and such agency expired with the death of Matthews, and Matthews' administrator was entitled to the property.   If Matthews died indebted to Lykins, his estate is bound for it; and, as far as the assets go, will pay it.   There is nothing to show that Lykins had any preference over any other creditor.

Certain other questions were pressed in the argument, which will now receive attention.   It is claimed that there was no proof of the death of Matthews.   The letters of administration were in evidence, and this was all the testimony on this point; and this was enough to make a *prima facie* case.   1 Greenl. Ev., § 550.

3. Evidence; letters of administration

Again; it is claimed that a letter written to Sparr by Lykins, after his assignment, was improperly admitted in evidence. The record does not show any such letter; and as it was received subject to objections, and the record purports to contain all the evidence, it is presumed the letter was excluded.

4. Exceptions not in the record.

Another objection is, that Sparr was allowed to testify as to the contents of a written contract between the decedent Matthews, and Wright and Posey.   Witness had seen the contract in the hands of Seibert, and the testimony is this: "It was a contract by which Wright and Matthews were partners, and purchased a lot of Texas cattle of Posey, and agreed to pay therefor on reaching

5. Errors which do not prejudice, will be disregarded.

ing Kansas with the cattle." This was all the testimony about the contract. This testimony was clearly incompetent, as no effort was shown to obtain the contract itself. But the fact was immaterial, and was admitted subject to objection as is frequently done where the same tribunal hears the testimony and decides the case, and as appears was done in this case. The fact was not only immaterial, but plainly appears not to have had any influence in the findings of the court, as not one of the facts found in the slightest degree depends upon the contract between Matthews and Wright as to the Texas cattle. The error therefore is not one for which the judgment will be reversed. The judgment is affirmed.

BREWER, J., concurring.

VALENTINE, J., not sitting in the case.