R. A. DORSEY, INTERVENER, v. LEO FRANK ET AL.

Delivered December 24, 1896.

**1. Trust Fund to Pay Notes at Maturity—Who Entitled to.**

Where a debtor has deposited money with his creditor as a trust fund to meet the payment at maturity of certain notes made by the debtor to the creditor and assigned to third persons, and the creditor in the execution of a deed of trust for the benefit of creditors prefers the debtor to the extent of the fund so deposited, the preference inures to the benefit of the owners of the notes, as having the prior right.

**2. Trust Fund—Assignment of—Notice.**

See the opinion for evidence of facts held sufficient to put a prudent person upon inquiry as to the title to a fund which he contemplates purchasing.

ERROR from Galveston. Tried below before Hon. WILLIAM H. STEWART..

*Davidson & Minor*, for plaintiff in error.—1. It appeared from the undisputed evidence that there were certain debts owing to the defendants in error, by Lessing, Solomon & Rosenthal and J. P. Rodgers, aggregating about the sum of $8200, and evidenced by notes; and that none of said notes, or the names of the holders thereof, were mentioned or intended to be mentioned in the deed of trust; and the court erred in holding that, in naming the said J. P. Rodgers in said deed of trust, and giving therein the exact indebtedness due him from the said Lessing, Solomon & Rosenthal, the said National Exchange Bank of Boston, defendant in error, was entitled to said trust fund, to secure its indebtedness evidenced by one of said notes, which was nowhere and in no manner referred to in said deed of trust. Lott v. Kaiser, 61 Texas, 665; Jones on Chattel Mortgages (4th ed.), sec. 91; Morris v. Tillson, 81 Ill., 607; Mueller v. Provo, 80 Mich., 475, 45 N. W. Rep., 498; Barker v. Buel, 5 Cush., 519; Varney v. Hawes, 68 Me., 442; Reisterer v. Carpenter, 124 Ind., 30; Patchin v. Pierce, 12 Wend. (N. Y.), 61.

2. The legal title to the debt preferred being in J. P. Rodgers, his assignment and transfer of said debt passed such legal title to his vendee R. P. Dorsey, and defendants in error asserting only an equitable title to said debt or fund, the burden of proof was upon them to show

that plaintiff in error purchased with notice of such alleged equities, and that he was not a purchaser in good faith and for value. Barnes v. Jamison, 24 Texas, 362; Saunders v. Isbell, 5 Texas Civ. App., 513; Johnson v. Newman, 43 Texas, 642; Hill v. Moore, 62 Texas, 612.

*John W. Davis* and *F. H. Robertson,* for defendants in error.—1. It is a settled rule in equity that the creditor shall have the benefit of any counter or collateral security which the principal debtor has given to the surety, or person standing in the situation of a surety, for his indemnity. Such securities are trusts, created for the better protection of the debt, and a court of equity will see that they fulfill the design. Moses v. Murgatroid, 1 Johns. Ch., 119-131; 1 Perry on Trusts, secs. 77, 82, 243; Wallis v. Beauchamp, 15 Texas, 307; Higgins v. Wright, 43 Barb., 465; Curtis v. Tyler, 9 Paige, 435; Bank v. Throop, 18 Johns., 505; Vail v. Foster, 4 N. Y., 312; Crowell v. Hospital, 27 N. J. Eq., 655; Phillips v. Thompson, 2 Johns. Ch., 418; Pratt v. Adams, 7 Paige, 627; Clark v. Ely, 2 Sand. Ch., 166; Wright v. Austin, 56 Barb., 18.

2. One is not a bona fide purchaser if he had notice of facts sufficient to put him on inquiry. Jackson v. Waldstein, 27 S. W. Rep., 26; Angel v. Simmons, 26 S. W. Rep., 910; Smith v. Adams, 4 Texas Civ. App., 5; Howard v. Kopperl, 74 Texas, 494; Slayton v. Singleton, 72 Texas, 209.

WILLIAMS, ASSOCIATE JUSTICE.—The contest between the parties which is presented by this appeal arose in a case pending in the District Court of Galveston County, brought by Ullman, Lewis & Co., as creditors of Lessing, Solomon & Rosenthal, against Leo Frank, trustee, to whom the debtors had assigned property in trust for certain creditors, to secure a settlement of the trust. In the course of the proceeding, by pleadings filed by the National Exchange Bank of Boston, by J. P. Rodgers and R. A. Dorsey, as interveners, an issue was raised as to the right to a fund held by the trustee, under facts which will be stated. The pleadings presented the claims of the parties as they existed under those facts, and a statement of the latter will suffice for a disposition of the points made upon this appeal, without detailing the former, further than incidentally is done in the course of the opinion.

On the 14th of October, 1889, the firm of Lessing, Solomon & Rosenthal, composed of R. Lessing, J. A. Solomon, M. N. Rosenthal, and A. Cohn, of Waco, Texas, executed a trust deed, conveying to one Leo Frank all amounts due and owing to their said firm, to secure certain of their creditors, in the order named in the schedules attached to said trust deed, marked Exhibits A, B, and C, respectively.

This trust deed, among other things, recited: "That we, Lessing, Solomon & Rosenthal, are justly indebted unto sundry creditors whose names are specified in Exhibits A, B, and C, attached to this instrument; and being desirous of assuring and securing our said creditors in the

sums of money due them as shown in said Exhibits A, B, and C," etc. Among the creditors in said Exhibit B, the name of J. P. Rodgers, of Hico, Texas, was given in the manner following:

"J. P. Rodgers, Hico.......................$3,249.67."

The pleadings and evidence developed, concerning this claim of Rodgers, the following facts:

Prior to February 23, 1889, Lessing, Solomon & Rosenthal and Rodgers were engaged in business, the former in Waco, and the latter in Hico. Rodgers had for some time dealt with and been indebted to Lessing, Solomon & Rosenthal, and, at the close of the business for each year, was in the habit of giving his notes to that firm for the balance due, in order that they might use the notes to raise money, by indorsing and discounting them to other parties. The course of business between them was for Rodgers, after the execution and transfer of notes, to place in the hands of Lessing, Solomon & Rosenthal such money and property, as, from time to time, he could raise, in order to meet them when they matured, payment of them being made in this way by Rodgers and not directly to the holders of the notes. In accordance with this course of dealing, Rodgers, on the 23rd day of February, 1889, being indebted to Lessing, Solomon & Rosenthal in the sum of $8,273.74, executed to them his five notes as follows: (1) for $1,654.32, due October 15, 1889; (2) for $1,649,86, due November 1, 1889; (3) for $1,653.41, due November 15, 1889; (4) for $1,651.83, due November 30, 1889; (5) for $1,664.32, due December 15, 1889.

These notes were payable to Rodgers' own order, and were indorsed by him, and, after their receipt, they were, in the spring of 1889, indorsed by Lessing, Solomon & Rosenthal and were negotiated to various banks, appellee the National Exchange Bank of Boston becoming thus the owner of No. 4. The fifth note has been paid, and is not in question. At the time of trial, the others were held by other banks in the East. No suit or proceeding has ever been instituted on any of them. Appellee had, before intervening in this case, recovered judgment on note No. 4 against Rodgers, as principal, and Lessing, Solomon & Rosenthal as indorsers, and has been unable to collect it.

After executing the notes, Rodgers continued to put in the hands of Lessing, Solomon & Rosenthal money and property for the purpose of meeting them when they matured, the amount of which, at the date of the conveyance by the latter to the trustee, was $3,249.67. On the books of the firm Rodgers was charged with the notes and credited with the items making up this sum, and it was to it the deed referred in naming Rodgers as one of the beneficiaries. The purpose of Lessing, Solomon & Rosenthal in this was to secure Rodgers in the application of the fund which they had received from him to the notes, the holders of which were, at the time, not known with certainty. At the time of the assignment, the firm telegraphed Rodgers, notifying him of it, and that "you are fully protected," and in a subsequent conversation Solo-

mon stated that he would pay him, and "make it good whenever he got in shape."

Rodgers, in the proceeding instituted by Ullman, Lewis & Co. against Frank, the trustee, was impleaded by the latter, and on the 20th of November, 1893, filed his plea claiming to be a creditor of Lessing, Solomon & Rosenthal in the sum named in the deed. On the 9th day of December, 1893, Rodgers assigned his claim to appellant R. A. Dorsey, who paid him for it $1000 cash. The intervention of appellee, claiming the fund, was filed January 4, 1894, and that of Rodgers in November following.

Dorsey did not testify in the case. With reference to Dorsey's purchase of the claim, Rodgers testified as follows: "I transferred my claim against Lessing, Solomon & Rosenthal to Mr. Dorsey for a cash consideration of $1000, paid at the time in hand. I sold it for $1000 in cash. That $1000 did not go to pay anything that Mr. Dorsey owed, or any business that he was connected with, or go to pay any debt that I owed prior to that time. I told Mr. Dorsey about this claim that I owed; that I was made a preferred creditor, and I learned through Ullman, Lewis & Co. that they had sued the trustee and had gained 60 per cent of their claim. After Ullman, Lewis & Co. brought this suit I told him that I had a claim, too, in the trust, but I did not want to be bothered to attend court, in fact, didn't have enough money to fool away time, and I sold it to him, and told him I believed it would be a short time before he got his money. I do not know as I went into details about how that debt was created with Lessing, Solomon & Rosenthal. I may have told him I owed Lessing, Solomon & Rosenthal some money; that they had given me no credit for the money due upon open account, and I had been sued on the notes. I told him I had a claim; that I was a preferred creditor for three thousand and odd dollars. I told him I claimed I sent money to Lessing, Solomon & Rosenthal; they were owing me money at the time."

At the trial it was agreed that the trustee, after accounting fully, had in hand to pay upon the claim secured in the deed of trust in the name of J. P. Rodgers the sum of $1949.80, which was paid into court to be disposed of by the judgment, and was adjudged to belong to appellee the National Exchange Bank of Boston. It should be stated that the holders of the other notes had been made parties to the proceeding, and have not appealed. They are also made parties to this writ of error, and make no complaint of the judgment below.

*Opinion.*—The question involved in the case is not one as to reformation of the deed of trust executed by Lessing, Solomon & Rosenthal. It may be conceded, as contended by appellant, that, if appellee has not shown a right to the fund under the deed as it stands, the judgment in its favor must be reversed. But, when they received the property and money from Rodgers after they had indorsed the notes, Lessing, Soloman & Rosenthal were charged with a

1896.] DORSEY v. FRANK. 51

duty, both to the holders of the notes and to Rodgers, to apply the money realized from the security to their payment. When, as indorsers, they received from the principal debtor property with which to pay the debt, the creditor was entitled to subject such security for his own satisfaction. The indorsers held it, not only for their own protection, but in trust for the benefit of the creditor; and they also held it under obligation to the principal to apply the fund to the purpose for which it was delivered. The deed of trust should therefore be treated as a security created by them for the performance of their obligations to both.

The naming of Rodgers as creditor and the amount named should be treated as identifying the obligation which the makers of the deed desired to secure; but it does not conclusively establish the fact that Rodgers was the owner of the debt, or the only person to whom it was owed. The facts as to the rights of the parties in the fund secured existed in parol, and could be developed by proof aliunde the deed. As we have seen, the makers of the deed did not absolutely owe Rodgers any money. They simply owed to him the duty of applying, for his benefit, the proceeds of the property and funds received to the payment of the notes. A like duty was owed to the holders of the notes, and when it was discharged, the duty to Rodgers was also discharged. It results that the only right with respect to the fund in the hands of Lessing, Solomon & Rosenthal, which Rodgers had, was to have it applied to the notes, and therefore the right of the holders of the notes was superior to his. The security given for that right, though given in the name of Rodgers, inured to the benefit of those having the prior right. Pratt v. Adams, 7 Paige, 627; Curtis v. Tyler, 9 Paige, 432; Bank v. Throop, 18 Johns., 505; Vail v. Foster, 4 N. Y., 312; Eastman v. Foster, 8 Metc., 22; United States v. Sturgis, 1 Paine, 530.

Whether or not the right purchased by appellant from Rodgers was one in the enjoyment of which a person could be protected as innocent purchaser, we need not inquire. There was enough shown in the testimony of Rodgers, set out above to have put a prudent person upon inquiry, and the court below was justified in holding that Dorsey was charged with notice of the defect in Rodgers' title to the fund.

Appellant is not in a position to complain of the judgment giving all of the fund to the holder of one of the notes instead of distributing it amongst all of them. As he has no right to the fund, no injury is done him; and as neither the holders of the other notes, nor Rodgers, nor the trustee, is complaining, we are not required to determine whether the judgment in this particular is correct or not.

*Affirmed.*