(Superior Court of Cincinnati, 1898.)
General Term.

## THE JOHN SHILLITO CO. v. THE HENDERSON-ACHERT LITHOGRAPHING CO.

Where security is given with the intention that it shall be applied to the payment of the debt and be an indemnity to the surety, the surety is a mere trustee for the creditor, and substitution of the creditor may be decreed; but where the surety is indemnified only against the payment of the debt, it is personal to him and there can be no substitution or subrogation.

DAVIS, J; Dempsey, J., concurs; Smith J., dissents.

It appears from the petition and the evidence that the Henderson-Achert Lithographing Company on the 24th day of September, 1889, brought a suit in attachment against the firm of Belford, Clarke & Company, a non-resident corporation, and attached a stock of books and merchandise then in the possession of the

John Shillito Company, as the property of Belford, Clarke & Company. A firm known by the name of the Book & Stationery Department Supply Company claimed to be the owner of said books and merchandise so attached, and on or about November 1, 1889, said Book & Stationery Department Supply Company brought suit in replevin against the Henderson-Achert Lithographing Company, and also made the John Shillito Company defendant, to recover said goods so attached by the Henderson-Achert Lithographing Company. Said Book & Stationery Department Supply Company was also a non-resident corporation, and it became necessary to have resident bondsmen on said replevin bond. The Book & Stationery Department Supply Company had written a letter to one George B. Fox to become himself such bondsman, and also secure some other person to go on said replevin bond with him. This letter also requested the said George B. Fox to call and see the John Shillito Company, who had possession of said books; that said Book & Stationery Department Supply Company about the same time had also written a letter to James W. Dawson, superintendent of the John Shillito Company, about the same matter, which letter is as follows:

"Chicago, November 1st, 1889.

"James W. Dawson,

"Cincinnati, Ohio.

"Dear sir: We hereby authorize you to hold of the stock and merchandise now in the stationery department of the John Shillito Company, so much in amount as will be necessary to guarantee George B. Fox or whosoever he may have sign bond, against any loss by being a party to the bond given or to be given in the replevin suit of this company against the Henderson-Achert Lithographing Company, and to hold such stock and merchandise until such time as said George B. Fox may notify you in writing that he has no desire for any further guarantee.

"Yours truly,

"The Book & Stationery
"Department Supply Co.
" Per C. Higgins,
"President."

By virtue of this letter and certain verbal statements made by James W. Dawson to George B. Fox that he would be safe in going on said replevin bond, and that he was amply protected, etc., thereupon said George B. Fox procured one George Fox to go on said replevin bond with him, and both were accepted, and the books and merchandise were replevined and turned over to said Book & Stationery Department Supply Company.

July 12, 1890, a final judgment was rendered in favor of the Henderson-Achert Lithographing Company against Belford, Clarke & Company, in said attachment suit, and a judgment was rendered in its avor for the sum of $3,129.02 and costs.

January 22, 1897, judgment in favor of the defendant in error herein and against the Book & Stationery Department Supply Company, in said replevin suit, was rendered for the sum of $4,365.56 and costs, and that, after certain payments have been made thereon, there is still due to defendant in error the sum of $3,556.99, with interest on same from January 4, 1897.

Belford, Clarke & Company and the Book & Stationery Supply Company are non-residents, and are admitted to be insolvent, and no suit has ever been brought on said replevin bond against said George B. Fox and George Fox.

The only averment contained in said petition of the Henderson-Achert Lithographing Company as to the custody, care, etc., of said books and merchandise, or the proceeds thereof, by said John Shillito Company is as follows:

"And the plaintiff further says, that the defendant, the John Shillito Company, has realized from the sale of said stock of goods and other merchandise more than sufficient to pay the said judgment and interest and costs in case number 44378, but though duly requested refuses to pay to, or for the plaintiff, the balance due upon said judgment, or satisfy said judgment."

It would seem from the averment in the petition that the Shillito Company had, at the commencement of this action, merchandise or credits of Belford, Clarke & Company, and of the Book & Stationery Department Supply Company, in its possession, but the evidence in the case shows, and it is admitted by counsel of the Henderson-Achert Lithographing Company, that before the commencement of this action, and before final judgment had been rendered in the replevin suit, that the Shillito Company had sold all the books and merchandise, and had remitted all of the moneys to the Book & Stationery Department Supply Company, and at the request of the Book & Stationery Department Supply Company, and without the knowledge, or consent of the said Geo. B. Fox. Judgment below was rendered in favor of Henderson-Achert Lithogarphing Company. Error is prosecuted to reverse the same.

It is urged that the John Shillito Company held said books and merchandise or the proceed thereof as a trust fund for the benefit of the Henderson-Achert Lithographing Company, and that the plaintiff below was subrogated to the rights of the replevin bondsmen. On the other hand, it is contended that the same was only an indemnity to said bondsmen, and a matter personal to them.

Were said books and merchandise or the proceeds thereof a trust fund or an indemnity, or were they a trust fund and an indemnity combined? It is clear that George B. Fox, the surety, and his principal, the Book & Stationery Department

Supply Company, could at any time agree to order the John Shillito Company to deliver said books or the proceeds to whoever they saw fit, but such an agreement was not entered into; but the principal, without the knowledge or consent of Fox (surety), makes a demand on the John Shillito Company for the books and proceeds, and the same are turned over to the principal by the John Shillito Company, and in doing this both the principal and he Shillito Company (stakeholder) violated their contract with Fox, and a right of action ripens in him for the breach whenever he is called upon for the payment of the judgment of the Henderson-Acher Ltithographing Company.

Suppose principal and surety had agreed to release the indemnity, could he Henderson-Achert Lithographing Company by injunction prevent principal and surety from releasing the indemnity in the hands of surety? Certainly not, and for the reaon, the principal had given a replevin bond according to law, and the creditor in such case has to follow the security specially given to him in the event of his success to collect his debt.

There is not the slightest suspicion in the evidence or agreement that these books and merchandiso or the proceeds thereof were to be held as indemnity or security with the intention that the same be finally applied to the payment of the debt of the Henderson-Achert Lithographing Company.

The distinction between cases where the creditor can be subrogated and where he can not is this: When the security is given with the intention that it shall be applied for the payment of the debt and be an indemnity to the surety, he (the surety) is a mere trustee for the creditor and holds same in trust, and substitution may be decreed; but where the creditor is to indemnify the surety only against he payment of the debt, as in the case at bar, it is personal to the surety, and there can be no substitution; the creditor can only be subrogated in those cases where the surety is a mere trustee.

There is no averment in the petition that the funds in the hands of the John Shillito Company was a trust fund for the Henderson- Achert Lithographing Company, and there is not a scintilla of eivdence that principal and surety ever contemplated or thought it was a trust fund for the benefit of the said Henderson-Achert Lithographing Company. The John Shillito Company were simply stakeholders for both principal and surety, and if the John Shillito Company misappropriated the fund or indemnities, or permitted either principal or surety to withdraw the indemnity without the consent of the other, it would be liable in damages to the party injured; but in case

at bar Fox can not maintain an action either at law or in equity against the John Shillito Company, for the reason that he has not been damnified, and the right of the Henderson-Achert Lithographing Company can not rise higher than Fox. 18 O., 35; 8 O. S., 1; Pratt v. Walworth, 15 C. C. R., 412.

It is well settled that if a fund or pledge be in the hands of a surety for his indemnity, the creditor may, if he has no other remedy, compel the application of the same to his debt. Not only is this true of a fund in the hands of a surety as indemnity, but a creditor can follow the funds of the principal into the hands of a stranger, and if there are no priorities, compel the application of the same to the liquidation of his debt.

In this case there is no fund, but a broken promise of the principal to the surety, and a violation on the part of the holders of the indemnity in permitting the principal to withdraw the same without the consent of the surety. This is a right personal to the surety, and the creditor can not be subrogated or substituted for said surety.

Judgment of special term is hereby reversed.

Maxwell & Ramsey, for the Plaintiff in Error.

Wilby & Wald, for Defendant in Error.

———

Opinion by SMITH, J., (Dissenting.)

This is an action by the Henderson-Achert Lithographing Company to recover from the John Shillito Company the sum of $3556.99 with interest thereon from January 4, 1897. The case was tried below before a jury and a judgment recovered by the plaintiff for the full amount claimed; and error is now prosecuted here to reverse that judgment.

With the exception, to which I shall hereafter refer, all the facts in the case are admitted; and as the one fact in dispute has been found by the jury in favor of the defendant in error, and as such finding is not manifestly contrary to the weight of the evidence, the case presents solely questions of law which arise upon an established state of facts.

A brief statement of the facts is as follows:

On the 24th day of September, 1889, Belford, Clarke & Company, an Illinois corporation, was indebted to the plaintiff, the Henderson-Achert Lithographing Company, in the sum of $2988.00, and on that day the plaintiff brought an action against the Belford Company in this court and levied an attachment on a large stock of books and other merchandise belonging to the Belford Company, which were in the possession of the defendant, the John Shillito Company, of this city.

Subsequently, on November 1, 1889, the Book and Stationery Department Supply Company, another Illinois corporation, claiming to be the owner of the attached

property, replevied the goods from the attaching officer and the John Shillito Company, in whose custody the goods, by consent of the parties in the attachment proceedings, had been permitted to remain. The sureties upon the replevin bond were George B. Fox and his uncle, George. Fox, since deceased, both of whom became surety on the bond under the following circumstances.

The books were originally in possession of the Shillito Company by an agreement with the Supply Company by the terms of which, the Shillito Company were to receive ten per cent of the gross receipts from all sales. The Shillito Company were therefore interested in freeing the books from the attachment lien. To accomplish this, the Supply Company wished to bring suit to replevin the books, and to this end a bond was nececessary. To procure a bondsman the Supply Company directed the Shillito Company to agree to hold such portion of the books as might be necessary as security to indemnify any one who might go on the bond, and the Shillito Company agreed with and promised Fox that, if he would go on the bond, it would hold as a fund for his indemnity to save him from loss, so many books (or their proceeds if sold) as might be needed for that purpose, until such time as he should notify them in writing that he no longer required them to do so. Fox and his uncle thereupon became surety for the Supply Company on the bond in the replevin action. The John Shillito Company sold all the books, but instead of holding the proceeds, paid them over by the direction of th Supply Company to a foreign corporation, since dissolved. In the various transactions detailed the Shillto Company was represented by an agent in its employ named Dawson.

It is due the Shillito Company to say Dawson denied making the agreement to which I have referred, and the Shillito Company contended that the making of the agreement was beyond the scope of his agency. But the jury have found adversely to them with respect to these facts.

The Supply Company and George B. Fox and his uncle are both insolvent. There is evidence tending to prove these facts in the record, counsel for the Shillito Company have not disputed them, and the court charged the jury that they had been proven, and the defendant did not except to that charge.

The attachment suit was decided in favor of the Lithographing Company in July, 1890, and judgment was obtained against the Chicago Company in the replevin suit on January 7, 1897.

The sole question presented in the case is one of law, viz: Has the Lithographing Company a remedy against the Shillito Company?

The legal effect of the replevin action and the giving of the bond in that action was to make the Lithographing Company a creditor, the Supply Company a debtor, and Fox a security for the amount called for in the replevin bond, if it should subsequently appear that there was a liability on the same.

Such being the relation which the parties bore to one another, it seems to me that the law governing their rights, under the facts before us, is conclusively settled in favor of the Lithographing Company and may be summed up as follows:

(1). The Lithographing Company as creditor is subrogated to the rights of Fox to all securities provided for his indemnity by his principal, (2), one of Fox's rights is to sue the Shillito Company for its failure safely to keep and hold as a fund for his indemnity the property put into its hands for that purpose by the Supply Company, the debtor, and which both the Supply Company and the Shillito Company agreed that it should so hold in consideration of Fox signing the bond. (3). The principal debtor and the surety both being insolvent, the creditor may proceed at once to realize upon the security in the surety's hand, viz: the right of action against the Shillito Company, without first securing a judgment against the principal and surety.

That the creditor has the right in equity to subject assets of the principal in the hands of the surety, where the principal and surety are both insolvent, without going through the formality of securing a judgment, is a proposition well settled in other states, and I think is fairly deducible from the authorities in this state.

In Kelly v. Herrick, 131 Mass., 373, the syllabus is as follows:

"A guardian is entitled in equity to have securities, given by a former guardian to his sureties to indemnify them against their liability for his debt to the ward's estate, sold and the proceeds applied to the payment of that debt, the former guardian and the sureties having become insolvent, and a portion only of the debt having been paid by the sureties; and the sureties are not entitled to have the amount so paid allowed to them out of the proceeds of the securities before the claim of the guardian is satisfied, but only to the balance remaining after payment of such claim."

At pp. 374-5 the court said:

"We are of opinion that the plaintiff is entitled to the relief prayed for. These securities were given by the former guardian to indemnify his sureties, in case they actually discharged the liability they had assumed in his behalf, by paying to the plaintiff the money due the ward's estate. Failing to pay this debt by reason of insolvency, the plaintiff has a right in equity to have the securities sold and the proceeds applied to the pay-

ment of his claim. Property thus given to a surety as security for the payment of a debt, is held by such surety in trust for the creditor."

In New Bedford Inst. for Savings v. Fairhaven Bank, 9 Allen, 175, the first sentence of the syllabus is as follows:

"If the maker of a promissory note gives a mortgage as security to an accommodation indorser, whose liability upon the note afterwards becomes fixed, the indorsee, after the insolvency of the maker and indorser, is entitled to have the mortgage assigned to him, *although the condition of it is only for the security of the indorser, and not to pay the debt.*"

In the Ohio Life Insurance and Trust Company v. Henry L. Reeder et al., 18 Ohio, 35, a bill in chancery alleged "that Henry L. Reeder made to Nathaniel Reeder a mortgage conveying certain real estate conditioned for the payment of $3800 due said Nathaniel, and likewise to secure and save said Nathaniel harmless against certain indorsements that he had made for him to the several banks of Cincinnati, amongst which was three notes payable at the Ohio Life Insurance and Trust Company. The bill further set forth that on the 2nd day of January, 1845, Henry L. Reeder made to Nathaniel Reeder another mortgage on other real state, conditioned to protect and save said Nathaniel harmless as his indorser on a number of other notes."

It was also stated that "the Ohio Life Insurance and Trust Company were the holders of two of these notes indorsed by Nathaniel and covered by the mortgages and that both were due and unpaid; that they were regularly protested for nonpayment and that due notice was given to Nathaniel Reeder, the indorser, and that Henry and Nathaniel Reeder neglected and refused to make payment."

The prayer of the bill was that the mortgaged premises might be sold and the proceeds applied to the payment of complainant's debts.

The bill was demurred to and the court sustained the demurrer upon the ground that it did not appear from the bill but that the plaintiff had an adequate remedy at law because there was, "No allegation in the bill that defendants have (had) not sufficient property subject to levy and sale on execution to satisfy their claim— that a plain and adequate remedy can not be had at law."

It is true that the syllabus of the case would perhaps warrant the conclusion that a judgment must first be had against the principal or surety before resort may be had to the securities in the hands of the surety, but the syllabus was prepared by the reporter and not by the court, and the opinion does not sustain the syllabus except as applied to the particular facts of that case.

It is very clear to my mind that the Supreme Court did not intend to hold in that case that a creditor could never proceed to subject property of the principal in the hands of the surety until the creditor had obtained a judgment against the principal and surety.

The ground of the decision is stated in the paragraph next to the last, and is as follows:

"But there is no allegation in the bill that shows that the notes held by the complaint could not be collected by the ordinary proceeding at law. It is true that it is alleged in the bill that complainants have not a remedy at law and are obliged to resort to a court of chancery, and it is said by counsel in argument that the number of different liens on these mortgaged premises creates that necessity. If the complainants had a claim that would enable them to resort to this property, that would probably be true. But there is no allegation in the bill that defendants have not sufficient property subject to levy and sale on execution to satisfy their claim—that a plain and adequate remedy cannot be had at law."

It is quite clear to my mind however that had the bill in that case alleged insolvency of the principal and surety, the demurrer would have been overruled; because in the course of the opinion we find the following language (pp. 46 & 47):

"That there are cases where a court of chancery will give the creditor the benefit of securities given by the principal to his surety, as indemnity, is well established. Indeed, where the liability of the surety has become absolutely fixed, as where judgment has been recovered against him and his principal has become insolvent, and cases of a similar character when a resort to his securities becomes absolutely necessary (other resources having failed to save him harmless from his liability), there appears to be great propriety in a court of chancery permitting the creditor to proceed directly to appropriate such security to the payment of his debt. It prevents circuity of action, the surety is better indemnified, not being disturbed, unless his securities are insufficient, and the creditor has the benefit of having his claim satisfied."

Then continuing the court says:

"Does the bill in this case show any necessity for either the surety or the creditor to resort to these mortgages. Has the contingency happened on which the conditions were to become forfeited? No judgment has yet been recovered either against principal or indorser—no suit has yet been brought—there is no allegation in the bill that the principal is not amply able to pay the debt. The indorser remains unharmed from his liability, and there is nothing alleged that shows that he will not always remain so."

It seems to me that the requirement which, I understand, is insisted upon

that before a creditor can subject assets of the principal in the hands of the surety he must reduce his claim against the principal and surety to a judgment, even though both are insolvent, is to sacrifice form to substance, to insist upon circuity of action, and to require a thing to be done which is utterly vain and profitless.

The principle of equity that needless circuity of action will always be avoided is also illustrated by the rule in equity upon the subject of principal and surety, which enables a surety, having indemnity from an insolvent principal, to proceed directly to subject such indemnity to the payment of the debt of the principal without first paying the debt. This principle is so well settled that I shall merely refer to several leading authorities without taking time or space to make citations from them. Such authorities are, New Bedford Inst. for Savings v. Bank 1 Allen, 175, 179, 180; Stump v. Rogers, 1 Ohio, 533; McConnell v. Scott, 15 Ohio, 401, and Coons v. Clifford, 40 W. L. B., 93.

If the surety has the right to thus act, why not the creditor who is subrogated to his rights?

In addition, however, to the objection to the prosecution of this action which I have just considered, viz: that no judgment has yet been recovered against the principal and surety, the defendant offers other objections which I will briefly refer to.

The first of these is that, the Lithographing Company was not a creditor of the Supply Company when it gave the bond in replevin; and did not become a creditor until judgment had ben obtained in the attachment and replevin cases, because the bond was not given to secure any existing indebtedness, but was given to secure a liability which was contingent upon the successful prosecution of said action, and that until such successful prosecution is had, the surety may release any securities he has in his hands and that the possible creditor cannot be heard afterwards to object that such release was made.

I cannot assent to the contention that the Lithographing Company did not become a creditor until judgment on the replevin bond in 1897. One is none the less a creditor because his claim is denied by the debtor. The seizure of the goods was wrongful, and from the moment the bond was given the Lithographing Company was a creditor of the Supply Company and has continued as such creditor down to the present time. It is true that if it had not prosecuted the replevin case to a successful termination it would have lost its rights as a creditor. But having been successful in such action it has the right to assert, as the fact is, that it was a creditor from the time of the wrongful seizure of the goods and the giving of the replevin bond.

Whether a surety who has securities of the principal in his hands may, before a debt becomes due and payable, release such securities without the consent of the creditor, is not a question which is presented in this case, although a number of authorites have been cited by counsel for defendant which, it is contended, bears out that proposition; because the surety in this case (Fox) never consented that the Shillito Company should turn the proceeds of sale over to a stranger and thus destroy the indemnity which such proceeds afforded.

It is further objected by the defendant that while equity recognizes a right of subrogation to tangible securities in the hands of a surety, it does not recognize a right of subrogation to rights in action, which the surety may have growing out of the deposit by the principal of property for the benefit of the surety.

I confess myself entirely at a loss to understand this distinction. A right of action is property quite as much as tangible property. Its form is different, it is true. But its nature as a property right is beyond question.

Furthermore, it is held in Pendery v. Allen, 50 Ohio St., 130, that,

"It is a well settled rule in equity that where a surety for his own indemnity takes a collateral security from his principal, such security is regarded in equity as a trust for the better security of the debt, and chancery will compel the execution of the trust for the benefit of the creditor."

If then the deposit of the books by the Supply Company with the Shillito Company for the indemnity of Fox as surety, created a trust in which the Shillito Company was the trustee, the disposal of the books or proceeds without the consent of the cestui que trusts was a breach of trust, and not only Fox, the surety, but the creditor as well is entitled to sue the trustee for such breach, for the Supreme Court has declared that, "Chancery will compel the execution of the trust for the benefit of the creditor."

It is contended for the defendant, however, that such a trust relation arises only when the security is given for "payment of the debt", and not for mere "indemnity".

This distinction, it seems to me, is not recognized by the citation from Pendery v. Allen, where the court uses the word "indemnity" instead of the phrase "payment of the debt".

But whether the position which the Shillito Company occupied was technically that of a trustee or not is immaterial.

The creditor is subrogated to the rights of the surety, and one of the surety's rights is the right to sue the Shillito Company for the failure to keep the books or proceeds as it agreed with the surety it would do, and to this right the creditor is subrogated.

This right of subrogation to a promise

made to the surety is illustrated in the case of Curtis v. Tyler, 9 Paige, 432, where the subject matter of the subrogation was not a fund, but a covenant; and is also illustrated by that line of well settled authorities in which it is held that where mortgaged property is sold to one who assumes payment of the mortgage, the mortgagee is subrogated to the rights of his mortgagor, the subject matter of the subrogation being a fund, but the purchaser's promise, for breach of which the original mortgagee may sue, though the promise was not made to him.

Keller v. Ashford, 133 U. S., 610, 623; Wager v. Link, 150 N. Y., 549; Coogley v. Murray, 52 Pac. Rep., 1108.

It is further contended for the defendant that the doctrine of subrogation does not apply to indemnity furnished to a surety by a stranger to the transaction, and that as Shillito & Company were strangers to the transaction under review, the creditor cannot complain of their conduct.

It is not necessary to enter upon a consideration of the question to what extent, if any, a creditor may be subrogated to property placed in the hands of a surety for indemnity by a stranger to the transaction. Because the promise of Shillito & Company was not the promise of a stranger, but the promise of a defendant in the replevin suit having an interest in the recovery of the property by the Supply Company; and the property which it agreed to hold was not its own property, but the property of the principal debtor, viz: The Supply Company, who had instructed it to make such an agreement.

In my opinion, the judgment of the court below should be affirmed.